IN THE MATTER OF EUGENE D. HEIN, AN
ATTORNEY AT LAW.

Argued February 19, 1985—Decided November 12, 1986.

---

[12]On remand, Sisler's claims for mental anguish and humiliation and punitive damages would also have to be addressed.

*David E. Johnson, Jr.,* Director, argued the cause on behalf of Office of Attorney Ethics.

*Bennett E. Bozarth* argued the cause for respondent (*Carella, Byrne, Bain & Gilfillan,* attorneys).

PER CURIAM.

This matter arises from a report of the Disciplinary Review Board (DRB) recommending disbarment of respondent. The recommendation is based upon its finding of multiple instances of misconduct involving neglect of clients' matters, misrepresentation of the status of matters, and, most significantly, two instances of misappropriation of clients' funds. Based upon our independent review of the record, we are clearly convinced that respondent engaged in the described conduct and that the ethical infractions warrant the discipline recommended.

Respondent was admitted to the bar in 1976. He opened an office for the practice of law as a sole practitioner. He practiced without incident until 1979, when the first of these incidents involving neglect arose. The problem matters continued into 1980 and were concluded in August 1981, when respondent closed his office. Various complaints were filed against him, including certain matters that were resolved without a finding of disciplinary infraction. He was suspended on September 28, 1982, for failure to answer the complaints. Respondent made no answer to any of the disciplinary complaints until January 11, 1983, when he appeared at a hearing conducted by the District III Ethics Committee (Ocean/Burlington). At that time, he substantially conceded the matters set forth in the

complaints and attributed his failings to very serious drinking problems.

The DRB made detailed findings with respect to the several incidents as to which it sustained the District Ethics Committee's (DEC) presentment of unethical conduct. Those findings may be summarized as follows: three clients gave retainers to respondent to represent them in matrimonial matters. Despite receipt of the retainers, respondent failed to file the requested complaints or to prosecute the parties' claims. He misrepresented the status of the file to one client. Another client retained him to handle various tax and commercial matters, to collect rents, and to prepare and file an income tax return. Respondent failed to file the tax return, to respond to inquiries about the matters, and to turn over $174 in rent receipts. In another instance, respondent was found to have aided a non-lawyer in the practice of law by reviewing bankruptcy petitions that the non-lawyer was preparing for filing. The non-lawyer signed respondent's name to the petitions without his consent.

The matter of gravest consequence to us and the ethics panels is a matter in which respondent was given a power-of-attorney, by clients who were in the military service, to collect the proceeds of a second mortgage. The clients had to leave the state before the matter could be resolved. Respondent collected almost $1,400 due on the mortgage but never responded to the clients' inquiries about the status of the matter and never turned the proceeds over to the clients. When the clients learned from the mortgagor that she had paid the mortgage balance to respondent, this complaint ensued.

It is plain that respondent exhibited a pattern of neglect in his handling of legal matters generally, in violation of DR 6–101(A)(2); that he failed to carry out his clients' contracts of employment, in violation of DR 7–101(A)(2); and that he misrepresented the status of various matters to his clients, in violation of DR 1–102(A)(4). Standing alone, these incidents would probably not warrant disbarment since they occurred during a

relatively brief period of respondent's career and were influenced, at least in part, by respondent's dependence upon alcohol during the period. *Cf. In re Stern*, 92 *N.J.* 611 (1983) (brief period of transgression occasioned by youthfulness, lack of supervision); *In re Barry*, 90 *N.J.* 286 (1982) (psychological problems); *In re Getchius*, 88 *N.J.* 269 (1982) (psychological problems). Nor was it a case of an attorney failing to respond to an earlier disciplinary warning and a continued pattern of neglect. *See In re Katz*, 90 *N.J.* 272, 284 (1982). However, we remain gravely troubled by the misappropriation of clients' funds. Respondent acknowledges that he collected about $1400 on behalf of the clients and that these funds were converted to his own use. This evidence clearly established that respondent unlawfully appropriated clients' funds. Although the amounts involved do not evidence a course of magnitude, there is no suggestion in the proofs that it was an unintentional misuse of clients' funds through neglect, *In re Hennessy*, 93 *N.J.* 358 (1983), or through misunderstanding, *In re Hollendonner*, 102 *N.J.* 21 (1985).

Respondent, in a quite appealing sense of candor, admitted to the District Ethics Committee that, with certain exceptions not relevant to our disposition, the allegations are essentially true. When asked if there was anything he would like to say by way of mitigation, he told the committee that he had "very serious drinking problems" and "that I didn't have enough sense to seek help when I should have * * *. I thought I was succeeding. But it did not succeed. It got progressively worse." His final comments were:

> MR. HEIN: I would like to add for what it is worth, I am sorry for the other members of the Bar. I cast a bad look on lawyers for doing this. But it got out of my control.
>
> MR. BEGLEY: That is a nice thing to say. But you have to try to think about yourself and straighten your own life out.
>
> MR. HEIN: That is why I am here today. I just want to get this all resolved and I will never practice law again. But at least I will be able to live with myself again.

How far we should look behind such an uncounseled admission concerns us deeply. Unfortunately, respondent did not appear before the DRB. It acted on his matter on the record before it. Before us, respondent was represented by counsel who forcefully argued that his misconduct was causally related to his alcohol dependency and that his alcoholism should be a mitigating factor that would avoid the extreme sanction of *In re Wilson*, 81 *N.J.* 451 (1979). Respondent moved for a formal remand to the DRB or D.E.C to present futher evidence. We deferred action on the motion pending receipt of supplementary proofs. After oral argument, we reserved final decision in respondent's matter, having taken under consideration several matters in which attorneys had been subject either to substance abuse or other compulsion. Respondent, represented by new counsel, moved for either reinstatement or a remand to the D.E.C to reconsider the question of whether there has been a knowing misappropriation within the contours of *In re Noonan;* 102 *N.J.* 157 (1986), a recent decision in which we noted that, under *Wilson*, the purpose, good or bad, of the misappropriation and the nature of the pressures that led to it were irrelevant: "it is the mere act of taking your client's money knowing that you have no authority to do so that requires disbarment." 102 *N.J.* at 160. Of importance here, we also reaffirmed that the strict rule of *Wilson* applies only to cases of knowing misappropriation.

In support of both motions respondent argued that the material submitted to the Court by prior counsel and renewed by current counsel demonstrated the need for a remand to allow the introduction of that and other evidence to the DEC. We have carefully considered the material on both occasions but have concluded that the evidence would not support an inference that respondent did not know that he had used clients' funds. Rather the evidence showed that his misappropriation had been the result of the extensive pressure of coping with his alcohol dependency and its ravaging effects upon his life and

practice. As respondent himself stated in his 1984 affidavit: "I couldn't bring myself to face the reality of the situation." We have no doubt that the alcoholism contributed to the loss of critical control of judgment, but cannot conclude that the evidence warrants a departure from the principle that we set forth in *In re Wilson.*

To some extent a similar effect on perception, cognition and character may be caused by financial reverses, especially when that results in extreme hardship to respondent's family. It is not unusual in these cases to find such hardship, at least as perceived by most respondents. Yet we disbar invariably. It is difficult to rationalize a lesser discipline where alcohol is the cause—especially in view of the often related factors of financial reverses, failure in the profession, family hardship, and ultimately misappropriation.

We recognize, as respondent argues, that alcoholism is indeed not a defect in character. The public policy of the State of New Jersey recognizes alcoholism as a disease and an alcoholic as a sick person. *See, e.g., N.J.S.A.* 26:2B–7 (alcoholics "should be afforded a continuum of treatment" rather than subjected to criminal prosecution). The course that we have pursued in disciplinary matters is premised on the proposition that in our discipline of attorneys our goal is not punishment but protection of the public. *In re Goldstein,* 97 *N.J.* 545, 547–48 (1984); *In re Jacob,* 95 *N.J.* 132, 138 (1984).

There may be circumstances in which an attorney's loss of competency, comprehension, or will may be of such magnitude that it would excuse or mitigate conduct that was otherwise knowing and purposeful. *See In re Jacob, supra,* 95 *N.J.* at 137.

We have carefully tested against the *Jacob* standard the proofs submitted by the respondent consisting of evidence of his seeking treatment at a rehabilitation center, expert analysis and expert opinion with respect to his condition, and personal affidavits from himself, his wife, and an employee. These

documents do demonstrate an alcohol dependency, but they do not demonstrate to us the kind of loss of competency, comprehension, or will that can excuse the misconduct. Respondent's expert described the normal progression of alcohol dependency to the point where "there is a disruption eventually of the normal critical thinking and in concern and judgment in his perception of daily living and in the accomplishment of skills in his particular profession." He concluded that respondent "has gone through all the expected stages of drug abuse. * * * There is no question, in my opinion, that there is a direct causal relationship between the progressive disease of alcoholism and the loss of critical care and judgment affecting [respondent's] practice of law."

In this case the evidence falls short, however, of suggesting that at the time the mortgage proceeds were converted to respondent's use, he was unable to comprehend the nature of his act or lacked the capacity to form the requisite intent. In addition, it does not appear that he was continually in a dependent state, since he was able to attend to his practice. We must, however, accept, as respondent's expert points out, that the alcoholic becomes skilled at concealing the impairment. Respondent's secretary candidly stated that she was surprised that he could function as he did. These psychological states are extremely difficult for us to resolve. We do not purport here to determine definitively the effect alcohol dependency can have upon the volitional state of an individual. We have only the legal standard to guide us. We wish that we knew more.

Until we know more, perhaps until science and society know more, we shall continue to disbar in these cases. We believe that to do less will inevitably erode the *Wilson* rule and the confidence of the public in the Bar and in this Court. We believe that public attitudes towards alcoholics and addicts have changed, that they are much more compassionate, and almost totally nonpunitive, and that the members of the public have recognized more and more that they are dealing more with a disease than with a crime. Nevertheless we do not believe that

that sympathy extends to the point of lowering the barriers to the protection we have attempted to give to that portion of the public who are clients, especially clients who entrust their money to lawyers.

The circumstance of the rehabilitated alcoholic or addict is deeply troubling to us. He has presumably recovered from the condition that contributed to cause his clients harm, and he will probably never again do any harm. But many of the lawyers, nonalcoholic, nonaddicted, disbarred by us for misappropriation would probably never again misappropriate. Indeed the probabilities may be even greater. Yet we disbar. That individual harshness—and so it is in most cases—is justified only if we are right about the devastating effect misappropriation—unless so treated—has on the public's confidence in the Bar and in this Court. Our primary concern must remain protection of the public interest and maintenance of the confidence of the public and the integrity of the Bar.

There may come a time when knowledge of the effect of drugs or alcohol, or other dependency upon the ability of individuals to conform their conduct to a norm, may lead us to alter our current view. Programs may be developed in conjunction with the Bar and the involved professionals that will promise the avoidance of public injury with the concurrent rehabilitation of dependent attorneys. We have seen, as they attest, that dependent attorneys become skilled at deception, not only of others, but of themselves. The best help is self-help, but others may be able to detect the need and help attorneys to take the first step to recovery. Under such programs an attorney could demonstrate commitment to a firm plan of recovery from the disease or condition. That in turn could assure the Court, and therefore the public, of the individual's ability to practice under circumstances or conditions that will assure public confidence until the disease or defect was arrested. For now, we find it difficult to exonerate the conduct influenced by the compulsion of alcohol dependency as contrast-

ed with the compulsion to preserve one's family or assist another in a time of extreme need.

We do not completely close the door. We never will. The Alcoholism Advisory Committee established by interested lawyers and professionals has already aided the Court and the disciplinary process in understanding these issues. New efforts undertaken by the State Bar Association give reason to hope that we may someday better begin to understand and deal with the effects of this disease in the profession. *See also R.* 1:20–9 (incapacity and "disability inactive" status).

Upon consideration of all the circumstances, we conclude that the appropriate discipline is disbarment. We direct further that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

*For disbarment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that EUGENE D. HEIN of BROWNS MILLS, who was admitted to the bar of this State in 1976, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that EUGENE D. HEIN be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.