IN THE MATTER OF JOHN DOUGLAS CROWLEY, AN ATTORNEY AT LAW.

Argued November 18, 1986—Decided January 16, 1987.

*William R. Wood,* Deputy Ethics Counsel, argued the cause for Office of Attorney Ethics.

*Richard L. Barbour,* argued the cause for respondent.

PER CURIAM.

Once again we must address the difficult problem of evaluating the mitigating effect of alcoholism on an admitted misappropriation of a client's funds. The matter arises from a report of the Disciplinary Review Board (DRB) recommending indefinite suspension of respondent for the misappropriations until he can demonstrate recovery from his alcoholism and, in addition, that he make reasonable restitution of the losses. The recommendation is based upon its finding that there was a causal connection between the misappropriation and respondent's alcoholism in that respondent's judgment was severely impaired by alcoholism, which condition impaired his moral reasoning to such an extent that he "was incapable of knowing or realizing that he engaged in illegal or unethical conduct." In reaching its conclusion in this matter, the Board had the benefit of a report of the Alcohol Advisory Committee (AAC), which met with respondent, his attorney and his counselor-therapist prior to the DRB's disposition. The AAC found that respondent was an active alcoholic during the period involved, that alcoholism was a factor in his conduct, and that he is now a recovering alcoholic. Reasoning that *In re Wilson,* 81 *N.J.* 451 (1979), was premised upon misappropriations that were accomplished knowingly and were aggravated by the totality of fraudulent conduct, the DRB concluded that alcoholism of the type presented here constituted the "rare" case that would not require disbarment under *Wilson, supra,* 81 *N.J.* at 461.

We respect the views of the DRB and AAC and have ourselves struggled to resolve the dilemma of recognizing alcoholism as the disease that it is, while recognizing the devastating effect that misappropriation has upon public confidence in the bar and the Court, whatever the cause of the misappropriation.

> But we have been unable to rationalize the qualitative differences that would excuse the violation in the case of one suffering disease or defeat, or one suffering from drugs or other dependency from one suffering the anguish of collapsing home life or marriage due to economic or other strains. Consequently, we have chosen to resolve the choice of professional discipline by maintaining our primary focus on the public interest.
> [*In re Skevin*, 104 *N.J.* 476, 489 (1986).]

In four recent cases, *In re Hein*, 104 *N.J.* 297 (1986), *In re Romano*, 104 *N.J.* 306 (1986), *In re Canfield*, 104 *N.J.* 314 (1986) and *In Re Ryle*, 104 *N.J.* 10 (1987), we found it necessary to disbar attorneys of previously good record whose dependence on drugs or alcohol had contributed to or caused the loss of judgment that led to misappropriation of clients' funds. We do not find the circumstances of this case markedly different in degree or in kind.

Respondent was admitted to the bar in 1957. He maintained a solo practice in Ocean County in real estate, matrimonial, and estate matters. In 1978 his practice began to decline due to increased competition, general economic decline, and changes in the law. His consumption and dependence on alcohol began to increase. He developed an indifferent attitude, not returning telephone calls and taking extended lunches. During September of 1981, he undertook a closing on behalf of a client, Gustavsen. As part of the representation, respondent was to satisfy an open mortgage in the approximate amount of $11,500 from closing proceeds. This mortgage was not, in fact, paid at the time of the closing or shortly thereafter. It was this that prompted an inquiry into respondent's conduct. A subsequent audit disclosed instances of misappropriation of clients' funds, some of which were candidly disclosed by the respondent to the Office of Attorney Ethics' investigator.

In sum, it was conceded that with respect to five client matters, a total of approximately $17,684 was diverted to the

personal use of respondent for mortgage payments, food, office expenses, and other overhead items. Although the exact dates of the misuse of the funds are not specified, it is clear that the principal matter in controversy, the $11,500 mortgage transaction, closed in September 1981, and therefore the major dates of involvement were in the latter part of 1981.

Upon disclosure of these occurrences, respondent was immediately temporarily suspended from the practice of law in early 1982.

In evaluating the quality of an attorney's misconduct, we have not sought to draw fine lines between the losses of volitional or rational powers or higher forms of consciousness. Instead, we have attempted to determine if circumstances exist that would justify us in concluding that he had suffered such a loss of comprehension that he was unable to comprehend the nature of the act or lacked the capacity to form the requisite intent.

Respondent's dependence on alcohol is markedly similar to that of Hein. Respondent's expert testified that:

[A]s more alcohol is ingested different facets of the personality become decommissioned. Starting with the most sophisticated, which is conscience and higher order level, moral reasoning, then basic data processing. Probably estimating, logic, and then finally the most archaic or primitive part of the personality * * *.

So the higher order skills are decommissioned by increasing ingestion of alcohol * * *.

In *Hein* the expert described the normal progression of alcohol dependency to the point where "there is a disruption eventually of the normal critical thinking and in concern and judgment and his perception of daily living and in the accomplishment of skills in his particular profession." That witness concluded that "there is a direct causal relationship between the progressive disease of alcoholism and the loss of critical care and judgment affecting [respondent's] practice of law."

Here, as there, the evidence falls short of disclosing that the attorney was unable to comprehend that it was a misuse of the closing proceeds to use them to pay his office and personal

expenses. When the matter was first called to respondent's attention by his client, he wrote a letter to the mortgagee-bank stating that failure to turn over the funds was a mistake due to lack of oversight of office routine. Later, when the mortgage remained unpaid, he told the client that it was because he was ill. We mention these circumstances not to denigrate the effects of alcoholism, but to illustrate that its effects upon human personality are subtle and complex indeed.

Like Hein, respondent recognized that he "had the ability to keep records," and that it was "just simply a not caring attitude" that led to the loss of control of the funds. In cross-examination he was asked why "certain funds were used of your clients for your own personal use." His answer in part was that "[i]t was because I had no income or substantial income."

We realize that these psychological states are extremely difficult to understand. The alcoholic attorney who appears to be able to function may in fact be masking the dysfunction. We do not dispute that there is a clear relationship between the respondent's alcoholism and the unethical behavior. There may even be a "but for" relationship between the disease and the conduct. *See* "Re: Alcoholism, Compulsive Gambling and Attorney Discipline," 118 *N.J.L.J.* 505. But, as we have noted in *Hein*, a similar effect on character and perception may be caused by financial reverses and hardship in one's family. For now, we shall continue to adhere to our belief that disbarment is the appropriate sanction in such matters.

Based upon our independent review of the record, we are clearly convinced that respondent engaged in the proscribed conduct and that the evidence does not demonstrate a loss of competency, comprehension, or will of such magnitude that it would excuse or mitigate conduct that was otherwise knowing and purposeful. *In re Jacob*, 95 *N.J.* 132, 137 (1984).

The judgment is that respondent be disbarred. Respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs.

## ORDER

It is ORDERED that JOHN DOUGLAS CROWLEY of SURF CITY, who was admitted to the bar of this State in 1957, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that JOHN DOUGLAS CROWLEY be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

*For disbarment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.