## IN THE MATTER OF PETER R. WILLIS, AN ATTORNEY AT LAW.

Argued September 14, 1988—Decided January 13, 1989.

*William R. Wood,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*Alan J. Karcher* argued the cause for respondent (*Karcher, McDonnell, Rainone & Aftanski,* attorneys).

PER CURIAM.

Respondent comes before us in response to an order to show cause issued on the basis of the decision and recommendation

of the Disciplinary Review Board (DRB) that he be suspended for one year. Although we agree with the decision that respondent's misconduct calls for a suspension, we conclude that a period of six months is the more appropriate discipline.

Initially the matter was heard by a special master, Julius Feinberg, a retired judge of the Superior Court, whose findings provided the basis for the presentment returned by the District VI (Hudson County) Ethics Committee. Thereafter the DRB found respondent guilty of (1) gross neglect in six separate matters involving clients during the years 1980 to 1984, and of a pattern of neglect in those matters; (2) misrepresentation to one client in 1982 by knowingly issuing a check drawn on insufficient funds; (3) a pattern of overreaching, consisting of charging unreasonable fees in eight separate matters; and (4) of the willful failure to file his 1981 federal income tax return, as evidenced by his conviction for that offense in the United States District Court for the District of New Jersey.

Our focus is on respondent's conviction for failing to file his income tax return and on his argument that this offense, like the other disciplinary infractions, was the product of his chemical substance abuse, including alcoholism. In this regard, the DRB found that respondent

argued that the disease of alcohol affected every area of his life, especially his judgment, therefore also affecting his professionalism.

Respondent testified before the special master that because of his father's death, which was a direct result of his alcoholism, respondent never drank alcohol until he was 36 years of age in 1978. It was also around this same time that respondent determined to seek a divorce from his first wife, after approximately 10 years of marriage.

Respondent recounted in detail his slide into drug induced and alcoholic stupors. He first visited a physician, who treated him for hypertension and prescribed inderal. Without disclosing this treatment to a second doctor, respondent obtained a prescription for valium. Respondent claimed he ingested the inderal and valium at the same time and in different quantities depending upon his own moods. He concomitantly experimented with illegal drugs like cocaine and marijuana and increased his alcohol intake. He claimed he ultimately consumed one quart of alcohol daily. As a result of this substance abuse, he was vomiting daily, sometimes with blood, was often blacking out or hallucinating and was constantly dizzy, shaking and sweating. He also told of

the many times at the end of 1982 and 1983 when he aimlessly rode trains up and down the East Coast, while he consumed large quantities of alcohol. He related one incident in 1984 when he was in the Baltimore, Maryland, train station. He accosted a man because he was hallucinating. He believed he had killed that man. He even telephoned his children to tell them about it.

Respondent recounted [his version of] incidents with his ex-wife, beginning in 1978. * * * [A] bitter and protracted matrimonial action [lasted] approximately four years.

Respondent also told the special master his practice disintegrated during this period. In December 1982, his partnership was dissolved. Thereafter he rarely went to the office. By 1984 his rent was nine months in arrears. His telephone had been disconnected. All of his employees had left him.

Nonetheless, respondent admitted he could perform in court when required, and even had "periods of brilliance." He also met and in May 1982 married his second wife.

In March 1984, respondent entered Overlook Hospital in Summit, where he remained in the detoxification unit for approximately two weeks. Upon his release, he at first refused to enter a professional rehabilitation hospital. However, on the way home he changed his mind and entered the Center for Addictive Illnesses (Center), a program affiliated with Morristown Memorial Hospital that provides comprehensive care to chemically dependent individuals, ranging from detoxification to follow-up out-patient programs. He remained there for approximately one month, after which he joined Alcoholics Anonymous (AA). He testified he has not ingested alcohol or drugs since he entered the hospital's detoxification unit. He further testified he is currently an active member of AA, has been accepted to lead family recovery groups at the Center and is available at all times to aid other lawyers who are abusing alcohol or drugs.

Several witnesses testified about respondent's behavior both before and after his treatment at the Center. The Director of the Center, who is also a physician; the Speaker of the Assembly of the New Jersey Legislature, who was a personal friend; the senior staff attorney in charge of the legal division with the Prosecutor's Office in Hudson County; respondent's law partner, who also worked first as a law clerk and then as an associate for respondent; the First Assistant Prosecutor of Hudson County; an attorney who worked closely with respondent on civil matters, and a detective with the Jersey City Police Department, who is also an alcoholic and regularly attends AA, testified on respondent's behalf. Each corroborated respondent's testimony that although an alcoholic, he has fully rehabilitated himself.

The special master was impressed with the substantial mitigating factors. Respondent "completely bared his soul ... I've never heard an individual strip himself as naked as [respondent] did." He concluded:

Convincing evidence has been presented to me to prove that [respondent] has had the courage to admit his weaknesses and has undergone and is undergoing long and arduous treatment necessary to prevent his future addiction.

His devotion to his scheduled time with meetings and volunteer assignments is to be commended. There is no question that [respondent] is presently an outstanding lawyer with a brilliant mind and possibly in the future.

It would be a distinct shame to permanently lose his potential as a lawyer and as a civic-minded citizen, provided, of course, that his endeavors are adequately supervised.

Accordingly, the special master recommended a public reprimand.

Before this Board respondent acknowledged his derelictions, but once again argued that his substance abuse and personal problems should mitigate the offenses. He presented this Board with myriad letters from professional colleagues commending his basic good character. The OAE countered that all of respondent's problems cannot excuse his ethical derelictions.

[Citations and footnotes omitted.]

## With respect to respondent's infractions, the DRB found:

A criminal conviction is conclusive evidence of respondent's guilt in disciplinary proceedings. *Matter of Goldberg*, 105 *N.J.* 278, 280 (1987); *Matter of Tuso*, 104 *N.J.* 59, 61 (1981) [1986]; *In re Rosen*, 88 *N.J.* 1, 3 (1981); *R.* 1:20–6(b)(1). Therefore, no independent examination of the underlying facts is necessary to ascertain guilt. *In re Bricker*, 90 *N.J.* 6, 10 (1982). The only issue to be determined is the quantum of discipline to be imposed. *Matter of Goldberg, supra,* 105 *N.J.* at 280; *Matter of Kaufman*, 104 *N.J.* 509, 510 (1986); *Matter of Kushner*, 101 *N.J.* 397, 400 (1986); *In re Infinito*, 94 *N.J.* 50, 56 (1983); *In re Rosen, supra,* 88 *N.J.* at 3; *In re Mirabelli*, 79 *N.J.* 597, 602 (1979); *In re Mischlich*, 60 *N.J.* 590, 593 (1977) [1972]. Respondent's conviction establishes that he engaged in conduct that adversely reflected on his fitness to practice law, in violation of *DR* 1–102(A)(3).

Failure to file a federal income tax return "is a serious [dereliction] on the part of any member of the Bar, no matter what the excuse...." *In re Queenan*, 61 *N.J.* 579, 580 (1972). Every member of the bar is "acutely sensitive" of his duty to file such returns. *In re Gurnik*, 45 *N.J.* 115, 116 (1965); *In re Van Arsdale*, 44 *N.J.* 318, 319 (1965). A conviction for such a dereliction cannot be disregarded or "treated as a matter for reprimand." *In re Vieser*, 56 *N.J.* 60, 61 (1970); *In re Van Arsdale, supra,* 44 *N.J.* at 319. Even though all pertinent surrounding circumstances are considered, *In re Hynda*, 40 *N.J.* 586, 587 (1963), failure by an attorney to file his return, without any additional transgressions, has warranted a period of suspension. *Matter of Moore*, 103 *N.J.* 702, 702 (1986) (conviction for failing to file a personal income tax return resulted in a one-year suspension); *In re Fahy*, 85 *N.J.* 698, 698 (1986) (a conviction for violating 26 *U.S.C.* § 7203 resulted in a one-year suspension); *In re Hughes*, 69 *N.J.* 116, 117–118 (1976) (an attorney convicted of one count of failing to file timely tax returns suffered from recurring and debilitating heart attacks, which curtailed his legal practice; he voluntarily notified the Internal Revenue Service of his derelictions during an audit; he was suspended for six months); *In re Queenan, supra,* 61 *N.J.* at 580 (convictions for failing to file income tax returns for four consecutive years

resulted in a one-year suspension, after the court considered the extenuating circumstances that arose from serious family and personal illness); *In re Knox,* 58 *N.J.* 218, 219 (1971) (a conviction for failure to file an income tax return for one-year resulted in a six-month suspension in view of "a number of mitigating circumstances"); *In re Vieser, supra,* 56 *N.J.* at 60–61 (convictions for failing to file income tax returns for two consecutive years, which tax plus interest the attorney paid immediately upon notification from the federal authorities, resulted in a six-month suspension because of "a number of ameliorating facts"); *In re Margolis,* 55 *N.J.* 291, 291 (1970) (a conviction for failing to file an income tax return for a single year, after which the attorney admitted he had not filed returns for "some 16 years," creating a "substantial" tax liability, resulted in a three-year suspension); *In re Hartman,* 54 *N.J.* 372, 373 (1969) (a conviction for failing to file income tax returns for two consecutive years resulted in a one-year suspension); *In re Van Arsdale, supra,* 44 *N.J.* at 319 (convictions for "willfully and knowingly" failing to file income tax returns for two consecutive years resulted in a one-year suspension; the attorney's business and family problems provide "no sufficient legal or ethical excuse for his conduct"); *In re Hynda, supra,* 40 *N.J.* at 587 (a conviction for willfully failing to file a personal income tax return for a single year, although the attorney admitted he had not filed for the seven preceding years, resulted in a two-year suspension); *In re Wagner,* 27 *N.J.* 217, 218 (1958) (a conviction for willfully failing to file an income tax return for two years, coupled with an admitted failure to file such returns for the preceding ten years, resulted in a three-year suspension); *In re James,* 26 *N.J.* 392, 393, 395–396 (1958) (a conviction for willfully failing to file an income tax return for one-year resulted in a one-year suspension, despite the attorney's prior unblemished record, candor and fairness to the ethics authorities, a voluntary abstention from the practice of law, and the nearly overwhelming business venture of the attorney); *In re Wilson,* 24 *N.J.* 277, 277–279 (1957) (convictions for failing to file income tax returns for two years resulted in a one-year suspension, notwithstanding full repayment to the IRS, a 25–year unblemished professional career, a good reputation for honesty and veracity and some perceived embarrassment on the part of the attorney for being financially unable to pay the taxes when due); *In re DePuy,* 10 *N.J.* 282, 283 (1952) (convictions for knowingly and willfully failing to file income tax returns for three years resulted in disbarment).

Were respondent's conviction for willfully and knowingly failing to file his income tax return for 1981 his only transgression, this Board would now consider respondent's evidence of mitigation. However, there are several other instances of unethical conduct, which the Board is satisfied are supported by clear and convincing evidence. Hence, in recommending the quantum of discipline to be imposed, the Board has first considered all of respondent's actions.

Respondent entered into contracts of employment. He generally received substantial retainer fees at the outset of his representation. In six separate cases he thereafter failed to take the requisite action to pursue the interests of his client. *See In re Hollis,* 95 *N.J.* 253, 261 (1983); *In re Ackerman,* 95 *N.J.* 147, 163 (1984).

Mindful that the purpose of disciplinary action is not punishment of the attorney, but the protection of the public, the DRB considered the effect of respondent's substance abuse on his ability to practice law:

Respondent has sought to regain his professional footing. Except for the six-month period surrounding his hospitalization respondent has continued to practice law. He recently entered into a new partnership arrangement with a former associate. He resigned his position as counsel to the Speaker of the Legislature so as to be able to devote his energies to regenerating his practice and to helping other recovering alcoholics and drug addicts.

Respondent has sought to reduce any injury he has caused his clients. He publicly apologized to many clients while testifying before the special master. He repaid as much of the money designated as balance due by the fee arbitration committee and by the special master as he could. He informed this Board he will continue to make payments until all is repaid. Finally, he has abided by the installment plan he agreed to with the IRS and will ultimately pay all money due in personal income taxes.

Once respondent accepted his alcoholism and dealt with it, he cooperated fully with everyone. *See In re Rosenthal,* 90 *N.J.* 12, 17 (1982). He worked with the IRS to reach a speedy conclusion of that matter. He admitted his wrongdoing by pleading guilty. *Ibid.* He told the probation officer about his many personal and professional problems. He bared his soul to the special master. He hid nothing from either the law enforcement or the ethics authorities. He has had no other ethical complaints lodged against him. He once again enjoys a good reputation among his colleagues and friends, as the many personal letters submitted to the ′Board attest.

This Board concludes respondent has genuinely rehabilitated himself. With this evidence of his basic good character, respondent is unlikely to engage in actions similar to these again. *In re Sears,* 71 *N.J.* 175, 200 (1976). He has not demonstrated that his ethical infractions are intractable and irremediable. *In re Templeton,* 99 *N.J.* 365, 376 (1985). Such mitigation "is relevant and should be considered." *Matter of Barbour,* 109 *N.J.* 143, 159 (1988).

The Board is convinced that respondent's professional capacity and ability were seriously affected by his drug usage and alcoholism. They contributed to a loss of critical control of judgment. He pleaded guilty to knowing and willful failure to file an income tax return. He engaged in an appalling pattern of neglect of his clients and his practice. He did not, however, misappropriate clients' funds. *See Matter of Gilliam,* 106 *N.J.* 537 (1987); *Matter of Crowley,* 105 *N.J.* 89 (1987); *Matter of Hein,* 104 *N.J.* 297, 303 (1986). The Board concludes respondent's alcoholism "blunts the blame-worthiness of his misconduct." *Matter of Barbour, supra,* 109 *N.J.* at 162.

Nonetheless, respondent's dependency does "not demonstrate ... the kind of loss of competency, comprehension, or will that can excuse the misconduct." *Matter of Hein, supra,* 104 *N.J.* at 303. Accordingly, a four member majority of the Board recommends respondent be suspended from the practice of law for

one year. One of these members further recommends the suspension be suspended and respondent be directed to perform community service, because of length of time since respondent's transgressions, his genuine rehabilitation and his most recent record of service to the community. *Matter of Stier,* 108 *N.J.* 455 (1987).

A three-member minority concludes the mitigating factors far outweigh the aggravating and would recommend respondent be publicly reprimanded. This minority also underscores respondent's complete rehabilitation, his successful resumption of a law practice and his devotion to helping others similarly afflicted. He has so successfully regained his own personal stability that the Center has certified respondent as a group leader in their program. Finally, no further claims of ethical improprieties have arisen. Two members of the Board disqualified themselves.

The failure of a lawyer to file an income tax return is a serious transgression, regardless of mitigating circumstances, *In re Queenan,* 61 *N.J.* 579, 580 (1972), and cannot be redressed by a public reprimand, *In re Van Arsdale,* 44 *N.J.* 318, 319 (1965). Although mitigating circumstances may be relevant to the failure to file an income tax return, *In re Knox,* 58 *N.J.* 218, 219 (1971), we must weigh those mitigating circumstances in light of respondent's other acts of misconduct. We need not dwell on those acts except to state that over a five-year period respondent committed six acts of unethical conduct that demonstrated a pattern of neglect in violation of *DR* 6-101(A)(2). Those acts caused inconvenience to some clients and financial loss to others. During the same period, he overcharged several clients, thereby establishing a pattern of charging excessive fees in violation of *DR* 2-106. Additionally, he committed an act of misrepresentation in issuing to a client a personal check while knowing that it would be dishonored. All this reflects adversely on his fitness to practice law in violation of *DR* 1-102(A)(4) and (6). In sum, the offenses indicate that between 1980 and 1984 respondent was unfit to practice law. *DR* 1-102(A)(6).

Ordinarily, respondent's misconduct would call for a prolonged suspension. In the past, we have imposed a one-year suspension on attorneys who fail to file tax returns even though they had committed no other ethical offenses. *See In*

*re Moore,* 103 *N.J.* 702 (1986); *In re Fahy,* 85 *N.J.* 698 (1986). When added to his other misdeeds, respondent's failure to file his tax return would justify a substantial suspension. The record is clear that while respondent was in the throes of alcoholism, he was a menace to the public and to the integrity of the legal profession. For the past three years, however, he has been an inspiration to many and a credit to the bar. Should we concentrate solely on his past ethical infractions and ignore his remarkable recovery?

In another context, we have recognized that alcoholism is a handicap and a disease. *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 590–95 (1988). Thus, we are confronted with an apparent dilemma between our commitment to maintain public confidence in the bar and our belief that alcoholism can drastically affect the conduct of people, including lawyers. As this case illustrates, alcoholic lawyers are a threat not just to themselves, but to the clients who rely on them. We believe we best serve the public and the bar by rendering a decision that encourages lawyers to seek help to avoid inflicting continuing harm on their clients. With respect to alcoholic lawyers, the public may be best protected by a policy that encourages those lawyers to seek rehabilitation at the earliest possible moment. Such a policy would not only start afflicted lawyers on the road to recovery, but would contain the harm that they can inflict on their clients. We state that proposition tentatively and with the awareness that we have much to learn about chemical addiction, including alcoholism.

On the record before us, we are persuaded that respondent has gained control of his life. In 1984, when he admitted himself to the Center for Addictive Illnesses, he hit "rock bottom." Since then, he has climbed back to a position of trust and respect in the bar. Lawyers who distrusted him when he was an alcoholic have written glowingly of his conduct over the past three years. Adversaries in bitterly contested matters are effusive in their praise of his conduct as a trial lawyer. Outside the courtroom, he has taken his message into public

schools, to meetings of Alcoholics Anonymous, and to lawyers wrestling with substance abuse. Should we ignore his good works? What message would that send to similarly afflicted lawyers? How would that protect the public interest? To answer those questions, we must balance respondent's proof in mitigation with his willful failure to file his 1981 income tax return and with his other ethical infractions. In the absence of respondent's remarkable recovery, we would incline towards a suspension of more than one year. On this record, however, we conclude that the appropriate discipline is a six-month's suspension. That suspension is long enough, we believe, to remind the bar of its special obligation to file personal tax returns and to act ethically with respect to clients, yet not so long as to dissuade other alcoholic lawyers from seeking the help they need for their own good and that of their clients.

We direct that respondent reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs of transcripts.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI, and STEIN—7.

*Opposed*—None.

## ORDER

It is ORDERED that PETER WILLIS of JERSEY CITY, who was admitted to the bar of this State in 1970, be suspended from the practice of law for a period of six months effective February 1, 1989, and until the further order of this Court; and it is further

ORDERED that PETER WILLIS reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that PETER WILLIS be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that PETER WILLIS comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.