577 A.2d 503

IN THE MATTER OF GEORGE HAHM, AN
ATTORNEY AT LAW.

Submitted September 12, 1989—Decided August 3, 1990.

*John J. Janasie*, Asst. Ethics Counsel, on behalf of Office of Attorney Ethics relied on the report and recommendation of the Disciplinary Review Bd.

*Martin S. Livingston* submitted a letter in lieu of brief on behalf of respondent (*Almeida & Livingston*, attorneys).

PER CURIAM.

We confront again the recurring, vexatious, even tragic problem of the alcoholic lawyer who transgresses our ethics Rules. Respondent's misconduct, including knowing misappropriation of client funds, occurred in 1980–81, when he was drinking heavily, as had been his routine for almost a quarter of a century. This Court temporarily suspended respondent from the practice of law in November 1982 after he had failed to submit his books and records for audit. We are satisfied that since that date respondent has remained sober, has been a faithful and diligent member of Alcoholics Anonymous, and has made giant strides toward regaining control of his life. Despite those laudable efforts, we adhere to our well-established position that a respondent's alcoholism is not a sufficient mitigating circumstance to overcome the rule of *In re Wilson,* 81 *N.J.* 451, 409 *A.*2d 1153 (1979), mandating disbarment in knowing-misappropriation cases.

I

The facts of the ethics violation, admitted in every respect, need be sketched only in broad outline. Respondent, George Hahm, represented purchasers of residential real estate in September 1979. When a problem arose in connection with the closing of title, the sellers of the property sued respondent's clients for the deposit monies of $15,500. The buyers authorized Hahm to settle the lawsuit by disbursing $7,000 to the sellers and returning the remaining $8,500 to the buyers. After respondent settled the case in September 1980 consistent with the terms of his authorization, the realtor, who had been holding the $15,500 deposit, sent the money to respondent to be disbursed as agreed. Despite numerous efforts, the purchasers were unable to find out from respondent what had happened

with the case. In June 1981 Hahm told them that the case was "just about over." The clients later consulted another attorney, who learned that the matter had been settled in September 1980. In response to the new attorney's inquiry, respondent finally sent his clients a check in the amount of $8,500 drawn against his trust account, dated November 6, 1981, more than a year after settling the matter.

After his clients filed a grievance, respondent wrote a letter to the District Ethic Committee (DEC) investigator in January 1982, explaining that respondent had had extensive discussions with his clients and that they had authorized him to retain the balance of the deposit monies until the end of October 1981 "to have those funds on deposit to compromise and pay * * * claims [made by the real-estate agent]." In response to the formal ethics complaint that followed, respondent asked that the letter be considered his answer.

The DEC held a hearing in September 1982. Although he had been asked to produce his trust-account records at the hearing, Hahm did not appear. After the hearing the panel again sought the records. It also notified the Division of Ethics and Professional Services about certain improprieties regarding respondent's trust fund. That office scheduled an audit for October 1982 of respondent's books and records. When respondent neither appeared nor submitted the records, this Court entered an Order of Temporary Suspension. We continued the suspension in December 1982, pending final disposition of the ethics proceedings. The DEC report concluded that respondent had failed to represent grievants in a professional and zealous manner, had failed properly to fulfill the contract for professional services, and had engaged in conduct that adversely reflected on his fitness to practice law, in violation of *DR* 1–102(A)(5) and (6), and *DR* 7–101(A)(1) and (2).

When the matter came before the Disciplinary Review Board (DRB) in March 1982, respondent's counsel raised the defense of alcoholism. The DRB then referred the matter to the

Alcohol Advisory Committee, which concluded that respondent's actions had been the result of both alcoholism and his need for money to ease his financial difficulties; that his judgment had not been so impaired as to render him incapable of recognizing or understanding that his retention and use of entrusted funds had been plainly unethical; that he was amenable to treatment; that he appeared to be sincere in his desire to maintain sobriety and was trying to reconstruct his disintegrated life; and that he should undergo an in-depth examination by a professional alcohol counselor and treatment expert in the event he sought reinstatement to the practice of law.

After the DRB had received the Alcohol Advisory Committee's report, it remanded the matter to the DEC "so that it [could] establish a record and reach a determination concerning Respondent's proffer of alcoholism as a mitigating factor." The remand hearings disclosed respondent's habit of consuming as much as twenty-four quarts of beer on weekends and his frequent attendance in court after having consumed one or two quarts of beer. He readily admitted that he had used the $8,500 entrusted to him for his own purposes, and further said that his letter answer of January 1982, which had taken him weeks to prepare, was "a pack of lies." Specifically, he testified that he had taken his clients' funds from a trust account and deposited them in his personal account, and said that he had not been intoxicated when he had used his clients' funds for his own purposes. He told the DEC that:

> [t]he problem was that the money would flow from the trust account into a special account, then it would float in the special account, business account into my own account and I never really at that point knew that it was crazy, insane, and I was truly jeopardizing my license as a lawyer and everything else, you know, not to pay [grievants]. Whether I thought each time that I withdrew a certain amount of money from my business account or withdraw—I don't think I ever thought about it at that point, just doing it to pay the bills. Okay? But in the back of my mind, I knew that I was doing something terribly wrong. It was insane.

When asked whether he had known that his conduct was unethical and improper, respondent testified:

I don't think the word "knew" is appropriate, I really don't, honestly. I think that you are aware that something is wrong, okay? Whether you actually sit down and evaluate the ethics of the situation, not so, I don't think I ever did while I was drinking. I knew in a sense that I was doing something wrong, but if you ever, you know—it just is impossible to sit down and make a moral judgment under the influence of alcohol as an alcoholic.

The DEC concluded that

[w]hile the effects of [respondent's] alcoholism did not rise to the level of precluding him from recognizing a difference between right and wrong, indeed he as much as acknowledged this, we nonetheless find that the disease did play a significant causative role in bringing about the conduct that ultimately took place, in our judgment constituting a mitigating factor such as to make this case inappropriate for the ultimate sanction of disbarment.

As indicated at the beginning of this opinion, respondent has not consumed any alcohol since November 1982, has attended Alcoholics Anonymous meetings regularly, and has made progress in putting together the pieces of his life. He has worked at driving limousines and at selling title insurance. Although he and his wife separated in 1982, they have since resumed their married life.

On the basis of the foregoing the DRB agreed with the conclusions of the DEC that respondent had been guilty of unethical conduct. Although the DEC had concluded that respondent's alcoholism constituted a mitigating factor justifying a sanction less than disbarment, the DRB refused to accept that conclusion. Finding *In re Wilson*, 81 *N.J.* 451, 409 *A.*2d 1153 (1979), controlling, it pointed out that "although the record is clear that respondent was an alcoholic during the time of the events in question, and that he has made heroic strides towards rehabilitating himself, neither factor can save respondent from disbarment under current law." The DRB noted that although in *In re Hein*, 104 *N.J.* 297, 302, 516 *A.*2d 1105 (1986), we recognized that "[t]here may be circumstances in which an attorney's loss of competency, comprehension or will may be of such magnitude that it would excuse or mitigate conduct that was otherwise knowing and purposeful," the proofs in this case did not demonstrate that respondent "was unable to comprehend the nature of his act or lacked the capacity to form the

requisite intent." *Id.* at 303, 516 *A.*2d 1105. One member of the DRB would have imposed a suspension limited to the time from our November 1982 Order of Temporary Suspension. She believed that alcoholism as demonstrated by Hahm should be considered as a mitigating factor in all appropriate disciplinary cases, including those that involve misappropriation of client funds.

II

We can no more distinguish this case from *In re Hein*, *supra*, 104 *N.J.* 297, 516 *A.*2d 1105, than could the DRB. There the evidence demonstrated that Hein's misappropriation had resulted from "the extensive pressure of coping with his alcohol dependency and its ravaging effects upon his life and practice." *Id.* at 301–02, 516 *A.*2d 1105. We recognized that alcoholism is not a defect in character, and that there may indeed be circumstances so strong, so overwhelming in mitigation as to warrant discipline short of disbarment. *Id.* at 302, 516 *A.*2d 1105. Hein had presented expert proof that there was "a direct causal relationship between the progressive disease of alcoholism and the loss of critical care and judgment" affecting his practice. *Id.* at 303, 516 *A.*2d 1105. We concluded, however, that the evidence fell short of suggesting that at the time Hein had invaded his client's funds, he had been unable to comprehend the nature of his act or had lacked the capacity to form the requisite intent. In addition, we observed that Hein had been able to attend to his practice, a feature that, according to his expert, was consistent with the alcoholic's skill at concealing the impairment. Acknowledging the difficulty in resolving the psychological states revealed by the alcoholic, we made no effort "to determine definitively the effect alcohol dependency can have upon the volitional state of an individual." *Id.* at 303, 516 *A.*2d 1105. Because we were convinced, however, that to impose any discipline short of disbarment would "inevitably erode the *Wilson* rule and the confidence of the public in the Bar and in this Court," *ibid.,* and because we believed that

public sympathy did not "extend[ ] to the point of lowering the barriers to the protection we have attempted to give to that portion of the public who are clients, especially clients who entrust their money to lawyers," *id.* at 303–04, 516 *A.*2d 1105, we ordered that Hein be disbarred.

Like Hein, this respondent has satisfied us of the success of his efforts at rehabilitation. Like Hein, he is presumably in recovery from the condition that contributed to the cause of his clients' damage. And, like Hein, he will probably never again do any harm. But, as in *Hein,* we disbar because we are convinced that nothing less will be consistent with our view of the devastating effect of misappropriation on the public's confidence in the bar and in this Court. See *In re Hein, supra,* 104 *N.J.* at 304, 516 *A.*2d 1105; *see also In re Gilliam,* 106 *N.J.* 537, 524 *A.*2d 810 (1987) (respondent disbarred where record did not establish impairment of respondent's comprehension, competency, or will sufficient to excuse the misconduct under standards of *Hein* ); *In re Ryle,* 105 *N.J.* 10, 518 *A.*2d 1103 (1987) (respondent's alcoholism not mitigating factor sufficient to overcome presumption of disbarment in misappropriation case).

Respondent is disbarred. In addition, he is ordered to reimburse the Ethics Financial Committee for appropriate administrative costs.

So ordered.

### ORDER

It is ORDERED that GEORGE H. HAHM of NEWARK who was admitted to the bar of this State in 1967, be disbarred; and it is further

ORDERED that GEORGE H. HAHM reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that GEORGE H. HAHM be permanently restrained and enjoined from practicing law; and it is further

ORDERED that GEORGE H. HAHM comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with disbarred attorneys.

*For disbarment*—WILENTZ, C.J., and CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN, JJ.—7.

*Opposed*—None.