748 A.2d 103

IN THE MATTER OF WILLIAM WRIGHT, JR., AN ATTORNEY AT LAW.

Argued January 4, 2000—Decided March 17, 2000.

*John McGill, III,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Raymond A. Brown, Jr.,* argued the cause for respondent (*Brown and Brown* and *Alan Dexter Bowman,* attorneys).

PER CURIAM.

This matter arises from a decision of the Disciplinary Review Board (DRB) recommending that respondent William Wright, Jr. be disbarred. The matter came before the DRB on presentment of a Special Master charging respondent with knowing misappropriation of client funds, an event that almost invariably results in disbarment under the rule of *In re Wilson*, 81 *N.J.* 451, 409 *A*.2d 1153 (1979). Our independent review of the record leads us to conclude that disbarment is the appropriate discipline.

Respondent is a sole practitioner who was admitted to the bar in 1961. He maintains an office in South Orange. He has no prior disciplinary history. In December 1998, the Office of Attorney Ethics (OAE) conducted a random audit of his books and records. The audit disclosed that respondent has incomplete and confusing records with multiple trust accounts. As the investigation unfolded, it became apparent that the multiple accounts had served to control a scheme whereby the respondent's office manager-bookkeeper, Jewels Hightower, moved money among the various trust accounts, respondent's business accounts, and several accounts of W–K Development Co.(W–K). The bookkeeper admitted that she had moved money from respondent's trust account to his business account and to the W–K account, sometimes signing respondent's name without his authorization.

Respondent asserted that W–K was the bookkeeper's company and denied any involvement in the company or knowledge of any of the company's transactions. The proofs were clearly and convincingly otherwise. When a deficit arose in the varied accounts, respondent covered an overdraft through a loan in the amount of $58,000 from the National State Bank to W–K for which he signed a note as president of W–K.

A convincing example of respondent's participation in this scheme arises from a financing matter involving respondent's clients, the Andersons. The Andersons sought to consolidate their debts and took out a $64,500 mortgage, the proceeds of which went into one of respondent's trust accounts. Within a month,

respondent signed a $27,000 check to W–K, allegedly authorized by the Andersons to cover repairs to their home. This check was used to open the W–K account. Respondent then issued a $3,000 check to the bookkeeper, Hightower, for "salary." Hightower then issued four checks to respondent in the amount of $23,000. The fourth check for $17,000 was endorsed by respondent with the notation, "16 Laventhal Avenue, Irvington, NJ," the address of a property that respondent planned to purchase. In short, respondent knew that the Anderson funds were being used for other purposes. None of the $27,000 had been spent on repairs to the home.

We are thus unable to accept respondent's argument that he was blinded by affection for and trust in his bookkeeper, Hightower, a woman whom he later married. Before us in briefs and oral argument, respondent's able counsel have argued that we should allow a remand to explore the troubled state of mind that led respondent to this faith in his bookkeeper. Specifically, the attorneys challenge that part of the DRB's decision that equates such trust with "willful blindness" that clients' funds were being invaded. Respondent argues that the citation by the DRB to *In re Skevin*, 104 *N.J.* 476, 517 *A.*2d 852 (1986), is inapposite and does not support the result urged by the DRB. In *Skevin*, the respondent systematically withdrew from his trust account sums anticipated to be made up from proceeds of cases that had not yet been received. The Court held that Skevin "knew that he was withdrawing clients' funds from the commingled accounts on each occasion when he drew his own fees or disbursements in advance of receiving settlement checks." *Id.* at 485, 517 *A.*2d 852. That, respondent says, is a far cry from being victimized by a beloved employee. Respondent argues that this case fits closely into the pattern of cases in which the Court has found that, in the absence of clear and convincing proof of a knowing misappropriation, the fact that clients' funds have been invaded does not warrant disbarment. *In re Librizzi*, 117 *N.J.* 481, 569 *A.*2d 257 (1990); *In re Gallo*, 117 *N.J.* 365, 568 *A.*2d 522 (1989); *In re James*, 112 *N.J.* 580, 548 *A.*2d 1125 (1988). In this last case, the attorney had also

paid various personal obligations out of his trust account and attributed that to a secretary's error.

It is true that we do not disbar lawyers who are bad bookkeepers. This is not such a case. The DRB's report states:

> However, as found by the Special Master, the evidence goes beyond willful blindness—it establishes respondent's complicity in the misappropriations. There is clear and convincing evidence that respondent not only knew of the misappropriations, but that he was an active participant in the misconduct and in the activities undertaken to cover up the misconduct. Two clients testified that respondent asked them to sign false affidavits concerning the use of their funds. One of the clients actually signed the affidavit because respondent was her attorney and told her that he needed the statement. It was clear from her testimony that she did not understand the significance of what she was signing. The other client refused to sign the statement because it was not true.

There is overwhelming evidence that respondent knew that trust funds were being invaded.

We have carefully considered the request of respondent's counsel that we permit a remand to consider the effect of the emotional state in which respondent found himself. In a long series of cases, we examined the effects of alcohol, *In re Hein,* 104 *N.J.* 297, 516 *A.*2d 1105 (1986); drugs, *In re Romano,* 104 *N.J.* 306, 516 *A.*2d 1109 (1986); sickness, *In re Skevin, supra,* 104 *N.J.* 476, 517 *A.*2d 852; and compulsive gambling, *In re Goldberg,* 109 *N.J.* 163, 536 *A.*2d 224 (1988), as factors that might possibly mitigate the almost invariable disbarment resulting from the knowing misappropriation of clients' funds. In each instance we found it necessary to disbar attorneys with previously good records whose compulsive conduct, whether due to dependence on drugs, alcohol, or gambling, had contributed to or caused the loss of judgment that led to the misappropriation of clients' funds. We have struggled to resolve the dilemma of recognizing these personality disorders as the diseases that they are, while acknowledging the devastating effect that misappropriation has on public confidence in the bar and the court.

> But we have been unable to rationalize the qualitative differences that would excuse the violation in the case of one suffering disease or defeat, or one suffering from drugs or other dependency from one suffering the anguish of collapsing home life or marriage due to economic or other strains.

Consequently, we have chosen to resolve the choice of professional discipline by maintaining our primary focus on the public interest.

[*In re Skevin, supra,* 104 *N.J.* at 489, 517 *A.*2d 852.]

Respondent has long served his clients during an unblemished career. Nevertheless, based upon our independent review of the record, we are clearly convinced that respondent engaged in the proscribed conduct and that the appropriate discipline is disbarment.

We direct, further, that respondent reimburse the Disciplinary Oversight Committee for appropriate administrative costs.

*For Disbarment*—Chief Justice PORITZ, and Justices O'HERN, GARIBALDI, STEIN, LONG and VERNIERO—6.

*Opposed*—None.

It is ORDERED that **WILLIAM WRIGHT, JR.,** of **SOUTH ORANGE,** who was admitted to the bar of this State in 1961, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that **WILLIAM WRIGHT, JR.,** be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that all funds, if any, currently existing in any New Jersey financial institution maintained by **WILLIAM WRIGHT, JR.,** pursuant to *Rule* 1:21-6, be restrained from disbursement except on application to this Court, for good cause shown, and shall be transferred by the financial institution to the Clerk of the Superior Court, who is directed to deposit the funds in the Superior Court Trust Fund, pending further Order of this Court; and it is further

ORDERED that **WILLIAM WRIGHT, JR.,** comply with *Rule* 1:20-20 dealing with disbarred attorneys; and it is further

ORDERED that **WILLIAM WRIGHT, JR.,** reimburse the Disciplinary Oversight Committee for appropriate administrative costs.