307 So.2d 362 (1975)
In re Santo Anthony DILEO.
No. 54927.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*363 Sam J. Chauppette, Marrero, for Santo Anthony Dileo.
Carl J. Barbier, Thomas O. Collins, Jr., New Orleans, for La. State Bar Association.
BARHAM, Justice.
The applicant seeks to have this Court order the Louisiana State Bar Association to admit him as a member. Applicant applied to the Committee on Bar Admissions for permission to take the July, 1974 bar examination. That Committee, acting pursuant to the rules of this Court, met on June 11, 1974, and notified the applicant on June 13, 1974, that he did not satisfy the Committee that he was of good moral character as required by the rules of the Supreme Court of Louisiana.[*]
On applicant's first petition to this Court, the Committee was ordered, on June 27, 1974, to permit him to take the bar examination, subject to a subsequent determination of good moral character. Subsequently this Court appointed a Commissioner to conduct a hearing as to the moral fitness of applicant for admission to the practice of law in this State. That hearing was conducted on September 26, 1974, and the Commissioner reported his findings to this Court on November 12, 1974.
Applicant, now 27 years of age, received a degree in chemistry from Louisiana State University in Baton Rouge in 1969. He entered the Louisiana State University School of Dentistry in September, 1969. In January, 1970 he was informed of his dismissal for academic deficiencies; his testimony, however, indicates his belief that an arrest, which will be discussed infra, had some effect upon the dismissal. Applicant applied to Loyola Law School for admission and was accepted with a full explanation from the school that accreditation would not assure him of satisfying the Committee on Bar Admissions as to his moral fitness to practice law.
On February 13, 1973, applicant requested an advance ruling on the question of his good moral character. The Committee, as then constituted, advised applicant on April 24, 1973, that if his application were actually filed and considered as of that date, it would be denied because of his inability to satisfy the good moral character requirement. He is now applying to this Court for admission to the Bar as a graduate of an accredited law school of this State who has successfully completed the bar examination requirements.
Applicant's good moral character is brought into question by the following set of circumstances. On November 26, 1969, in the company of others, applicant went to Nuevo Laredo, Mexico, to buy some leather jackets. While there, he purchased six ounces of marijuana, which he attempted to bring from Mexico into the United States on November 27, 1969. He was apprehended by United States Customs officials. On January 14, 1970, he pleaded guilty to a federal charge of failing to pay the transfer tax on six ounces of marijuana. He was given a suspended sentence of two years and a fine of $250.00, and was placed on probation for three years, pursuant to the Young Adult Offender Act, 18 United States Code, § 4209, and was released to serve the probational term in the Eastern District of Louisiana.
One month later, without permission to leave the jurisdiction of his probation, applicant traveled to Memphis, Tennessee where he was apprehended on a minor misdemeanor charge. He posted an appearance bond of $50.00 for the violation and because the police indicated to him that the infraction would never be reported, the applicant returned to the Eastern District of Louisiana without advising his probation officer, Mr. Thomas W. Nielsen, either *364 that he had left the jurisdiction of the court, or that he had committed the misdemeanor. Mr. Nielsen discovered that the conditions of probation had been violated and referred the applicant to the court of original jurisdiction. He was required to appear before that court on April 17, 1970, where probation was revoked and the two-year sentence was imposed.
On December 18, 1970, after serving 248 days, the minimum one-third of his sentence, he was released on parole. On October 25, 1972, applicant was granted a full pardon and restoration of citizenship by the State of Louisiana.
Applicant attended the 1971 spring semester at Louisiana State University in New Orleans, and entered Loyola Law School that September. He graduated in May, 1974, ranked thirty-fourth out of one hundred and ninety-three students (in the top 25%), with a Juris Doctor degree.
In his findings, the Commissioner expressed concern about certain recent behavioral problems of Mr. Dileo. One was the failure of applicant to disclose to a fellow student his record of violations when the two of them were discussing in general terms the possibility of practicing law together after their graduation from Loyola. The Commissioner was also concerned about applicant's incomplete response to a question on the application form for admission to Loyola Law School which sought information about prior arrests, indictments or convictions for violations of the law other than minor traffic violations. Although he listed the serious offense of failing to pay tax on the marijuana, applicant omitted any information about the misdemeanor. We do not give the serious import to these "transgressions" accorded them by the Commissioner. A finding of moral unfitness in connection with these two matters requires a conclusion of intentional wrongdoing which is not sufficiently supported by the record.
The Commissioner has correctly set forth in his report the position of the applicant as he now appears before this Court, quoting from Moity v. Louisiana State Bar Association:
"`The practice of law is not open to all who wish to engage in it, nor, is the pursuit of the legal profession a natural, inherent or vested right, or one guaranteed by the Constitution; it is a personal privilege, granted by license from the Court and in the nature of a franchise from the State, limited to persons of good moral character, with special qualifications ascertained and certified as prescribed by law. Under the pertinent rules, every applicant to be admitted to practice must produce satisfactory evidence that he is (a) of good moral character, * * * *.' `Moity v. Louisiana State Bar Association, 239 La. [1081] 1082, 1090, 121 So.2d 87.' [1960] [p. 8, No. 6.]."
The Commissioner rightly concludes that the applicant would not have been admitted to practice immediately after the revocation of probation. The Commissioner recommends that we analogize Mr. Dileo's case to the standard for application for reinstatement to the Bar following disbarment. "[A] minimum of five (5) years must elapse following disbarment before the disbarred attorney may apply for reinstatement." Article XI, Section 12(a) of the Charter of the Louisiana State Bar Association. This Court rejects a rigid rule that transgressions of a non-lawyer when he is later considered for moral fitness to be admitted to the Bar are analogous to the disciplinary rules and sanctions applicable to licensed attorneys. We prefer to consider the facts of each case on the basis of the totality of the circumstances which brings the applicant before us.
We conclude that approximately four and one-half years before his application for admission to the Bar, the applicant committed two offenses within a period of one month which reflect upon his moral character. He spent almost one year in correctional facilities doing penance for *365 these offenses. He has spent the time since his release in society where he has made great advancement toward total rehabilitation, according to the transcript. In the words of his probation officer, his social attitudes have "materially improved." Certainly, he has been productive as a student and as a part-time law clerk for a law firm.
It is the obligation of this Court's Committee on Bar Admissions to screen almost a thousand applicants every year for their mental competency and their moral fitness to represent people before the courts of law of this State. The Committee's duties are onerous; the responsibility is great. That Committee is an adjunct of this Court and it becomes the final responsibility of this Court to review its findings.
We concur in the Committee's denial of applicant's admission to the Bar, which is supported by the Commissioner's findings. However, we believe that the conduct of the applicant is not conduct involving such a degree of moral turpitude that it should forever bar him from the practice of law in this State. We must therefore determine when and under what conditions this applicant should be admitted to the Louisiana Bar.
The next date for formal induction ceremonies for new attorneys is fixed for April 25, 1975. While this date practically coincides with the five-year period for reconsideration recommended by the Commissioner, our use of this date is a coincidence rather than an application of a rule. The applicant will be permitted to reapply as of April 1, 1975 to the Committee on Bar Admissions and the Committee on Bar Admissions is hereby ordered to certify applicant as morally fit for admission to the Bar if applicant has continued to rehabilitate himself. He will be admitted upon the record which we have reviewed, subject to the following conditions: (1) an oath by applicant that he has committed no new transgressions; and (2) a finding by the Committee that there have been no occurrences during the interim which have effect upon his moral fitness to practice law.
It is therefore ordered, adjudged and decreed that the Committee on Bar Admissions is affirmed in its action. It is further ordered, adjudged and decreed that the applicant, upon proper application and oath made on or before April 1, 1975, shall be presented to this Court for admission to the Bar on April 25, 1975, if there is no newly discovered evidence of misconduct reflecting upon his moral fitness.
NOTES
[*] Article XIV, Section 7 of the Articles of Incorporation of the Louisiana State Bar Association. See West's Louisiana Statutes, Title 37, page 145 et seq.