577 A.2d 149

IN THE MATTER OF THE APPLICATION OF
KENNETH C. STRAIT, JR.

Argued May 8, 1990—Decided August 2, 1990.

478

*Robyn M. Hill,* Chief Counsel, Disciplinary Review Board, argued the cause as presenter.

*Albert B. Jeffers* argued the cause for respondent.

PER CURIAM.

The issue in this proceeding is whether respondent, Kenneth Strait, Jr., a candidate for admission to the New Jersey bar, possesses those character traits indicative of fitness to practice law. Its resolution requires that we focus on three interrelated aspects of Strait's background, as revealed through the bar-admission process.

First, Strait had been convicted of several crimes committed between 1969 and 1971. More recently, in July 1985 he was arrested and charged with possession of cocaine and narcotics paraphernalia; both charges were dismissed. See *infra* at 482, 577 *A*.2d at 151. Second, three Certified Statements of Candidate submitted by Strait to the Committee on Character, in connection with his sitting for three administrations of the bar examination, contained responses that raised concerns about the applicant's candor. Third, and at the heart of this matter as we perceive it, Strait had been addicted to drugs and alcohol from adolescence until July 1985, when he was arrested

on the narcotics offenses. At that time respondent sought and received treatment for those addictions, and he has abstained from the use of intoxicating substances ever since.

Strait's application for admission to the bar has been the subject of extensive proceedings conducted by the Committee on Character and has engendered disagreement among Committee members. Part II of the Committee on Character (Conference Panel) conducted hearings in March and June 1988 to consider Strait's application for admission to the bar. See Regulations Governing Committee on Character (*RG.*) 303 (conference conducted by three members of Committee on Character may be held to consider application when, among other things, applicant had previously been convicted of a crime). Following those hearings, the Conference Panel unanimously recommended that certification be withheld.

Pursuant to *RG.* 304 respondent sought review of the Conference Panel's decision. The Hearing Review Panel (Review Panel) conducted *de novo* proceedings in March, April, and June 1989, and by a two-to-one vote reversed the decision of the Conference Panel and recommended that Strait be admitted to the practice of law, subject to conditions designed to ensure respondent's continued sobriety. The Statewide Panel of the Committee on Character (Statewide Panel) by a vote of five to one approved that recommendation. See *RG.* 303:4 (Statewide Review Panel shall review determinations to certify applicant's character subject to conditions).

We issued an order requiring respondent to show cause why he should not be refused admission to the bar. On the basis of our independent review of the entire record, we affirm the decision of the Statewide Panel.

I.

A.

The evidence produced in the course of these proceedings is consistent with the factual summary that follows. Kenneth

Strait, Jr., now thirty-nine years old, began using alcohol during high school. During his senior year Strait drank alcohol and smoked marijuana on a daily basis. During that time he also used cocaine, amphetamines, and barbituates.

While in high school, between March and December 1970, he had been arrested and charged on two occasions with possession of a dangerous weapon and larceny, and charged once with defacing property. He was ultimately convicted of those crimes and sentenced to probation.

Despite his substance abuse and criminal convictions, Strait achieved academic success and was awarded a full scholarship to attend Brown University. His academic career at Brown was short-lived, however, lasting only from September 1970 to June 1971. Strait continued to abuse alcohol and drugs while at Brown, drinking alcohol five to seven times a week, smoking marijuana, and using amphetamines, barbituates, and heroin. In order to support his drug habit. Strait stole from fellow University students. He was charged with and later convicted of breaking and entering, assault with a dangerous weapon, and breaking and entering with intent to commit larceny. In December 1970 he was suspended from Brown University.

In April 1971 Strait was arrested and charged with possession of a narcotic drug and frequenting a "narcotic nuisance," after police had raided the off-campus apartment of an acquaintance where Strait and others were smoking marijuana. In May 1971 Brown University re-opened Strait's file in order to investigate allegations that he had violated the conditions of his suspension. Specifically, it was alleged that he had attempted to procure monies fraudulently from the University through the improper use of vouchers. Strait was dismissed from Brown in June 1971. Thereafter, he left Rhode Island and moved to Louisiana. Criminal charges were still pending in Rhode Island at the time Strait left the jurisdiction, and bail money posted by his stepfather had been forfeited.

Strait remained a fugitive until March 1977. At that time, he surrendered to authorities in Rhode Island, pleaded *nolo contendere* on all charges, and received one year unsupervised concurrent terms of probation on each of the outstanding charges. Strait explained that his decision to terminate his fugitive status was prompted by his recent marriage to his long-time girlfriend, who had given birth to their son in 1972. Although Strait had described his alcohol and drug addictions as being "active" throughout the intervening years, he had decided to turn himself in to Rhode Island authorities because he was attempting to accept responsibility for his family and "pull [his] life together as best [he] could."

Strait enrolled at the University of Iowa in 1978, and received a bachelor's degree from that school in 1981. While a student there, he became intoxicated on alcohol four to five times a week and smoked marijuana several times a week. Despite his substance abuse, Strait maintained good grades, worked part-time, was president of the Minority Business Students' Association, and was active in other student and community organizations.

After disclosing fully his criminal history in his application, Strait was accepted to Rutgers University School of Law–Newark and began his studies there in September 1981. Strait's years at law school were marked by drug and alcohol abuse, poor academic performance, and a marriage that became increasingly strained. According to Strait, while attending law school he used alcohol to excess on a daily basis and cocaine "whenever [he] could get the money." He received his Juris Doctor degree from Rutgers in October 1984.

B.

In December 1984 respondent applied to take the February 1985 New Jersey bar examination and filed what would be the first of three Certified Statements of Candidate with the Com-

mittee on Character. In that Certified Statement, Strait responded in the following manner to three essential questions:

Q. Have you ever been addicted to, or received treatment for the use of narcotics, drugs, or intoxicating liquor?

A. No.

Q. Have you or has any business controlled by or managed by you ever been charged with fraud, larceny, embezzlement, misappropriation of funds, misrepresentation or similar offenses * * * in any legal proceeding * * *?

A. No.

Q. Have you ever been charged with, arrested for, or convicted of, the violation of any law (other than minor traffic offenses)?

A. Yes.

Attached to that Certified Statement was a list recounting all of Strait's prior criminal convictions, including those involving larceny.

Strait failed the February 1985 examination. He thereafter filed his application to take the July 1985 bar examination. The second Certified Statement of Candidate, which he submitted on June 11, 1985, was substantially identical to the Statement he had filed in December 1984.

On July 24, 1985, Strait was arrested by Englewood police officers for possession of cocaine (less than one gram) and possession of narcotic paraphernalia (a hollowed-out cigarette used to smoke cocaine). Strait did not immediately notify the Committee on Character of that arrest. Ultimately, the possession-of-cocaine charge was administratively terminated because of the small amount involved. The possession of narcotic paraphernalia charge was dismissed for lack of prosecution because the arresting officers did not appear at trial. The State therefore had no witnesses.

According to Strait, the July 1985 arrest was the "final jolt" that made him realize that he suffered from substance addiction. At the recommendation of his former marriage counselor, he communicated with Fair Oaks Hospital, an alcohol- and drug-rehabilitation center, and was admitted to the hospital's outpatient program on August 2, 1985. He also became an active member of Alcoholics Anonymous (AA), Narcotics Anon-

ymous (NA), and Lawyers Concerned for Lawyers (LCL), an organization designed to assist members of the legal profession with alcohol- and drug-addiction problems. From the time of his admission into the Fair Oaks program until now, Strait has abstained totally from the use of alcohol and drugs.

Having failed the July 1985 bar examination, Strait submitted his third and final Certified Statement of Candidate in January 1986 in anticipation of his sitting for the February 1986 administration of the bar examination. That Statement contained the following critical questions and answers:

Q. Have you ever been addicted to, or received treatment for the use of narcotics, drugs, or intoxicating liquor?

A. No.

Q. Have you ever been hospitalized or institutionalized for the treatment of emotional, mental, or nervous disorders?

A. Yes. Outpatient Recovery Center, Fair Oaks Hospital, Summit, New Jersey, 8/85 to present.

Strait also attached to his Statement a list describing his prior criminal convictions, supplemented to include the narcotics charges stemming from his July 1985 arrest.

Strait passed the February 1986 bar examination. He was interviewed in August 1986 by Edward Kenyon, the former chairman of Part II of the Committee on Character. During the interview, Kenyon pointed out what appeared to him to be an inconsistency in the applicant's January 1986 Certified Statement of Candidate—the negative response to the question concerning substance addiction and/or treatment for addiction, and the affirmative response to the question concerning hospitalization for emotional, mental, or nervous disorders detailing his treatment at Fair Oaks. Strait told Kenyon that the answers to those questions had been mistakenly transposed, explaining that he should have answered affirmatively the question relating to substance addiction, including a reference to his outpatient treatment, and negatively to the question concerning hospitalization for mental or emotional disorders. In accordance with Kenyon's suggestion, respondent amended his Certified Statement to correct that error. During the interview,

Strait also discussed with Kenyon the circumstances surrounding his arrest in July 1985 for possession of cocaine and narcotics paraphernalia.

## II.

### A.

The initial Part II Character Committee Conference considered Strait's application for admission to the bar on March 1, 1988, and June 14, 1988. The testimony focused primarily on three areas: discrepancies in the Certified Statements of Candidate that respondent had submitted to the Character Committee; his treatment for drug and alcohol addiction, including the extent of his recovery and the prognosis for continued sobriety; and the impact of Strait's addiction problems and his prior transgressions with the law on his general fitness to practice law.

After hearing the testimony of the applicant as well as several experts in the area of substance addiction, the Conference Panel unanimously recommended that certification of Strait's good character be withheld. The Conference Panel concluded that respondent had demonstrated a lack of candor in his dealings with the Character Committee and a "lack of repentance for his past transgressions." The Panel further concluded that Strait possesses a "personality flaw." The Panel's conclusions are best evaluated in the context of the testimony presented.

### 1.

Strait testified that the reason he had responded negatively to the question concerning drug and alcohol addiction was that he had not believed he was suffering from those addictions at the time he had filed the December 1984 and June 1985 Certified Statements:

Up until 1984 I saw that I had accomplished many many things. I thought I had overcome my problem, if I ever had a problem. Even though I was actively drinking, I didn't think I was addicted. I denied that I had a disease, I denied

that I had a problem, and that's where that answer came from. At that time for me that answer was absolutely correct.

Dr. Canavan, the medical director of the Impaired Physicians Program for the Medical Society of New Jersey, and former director of Mount Carmel Hospital's Alcohol and Drug Rehabilitation Program, also testified regarding that issue. When asked to provide a possible rationale for Strait's negative response to the question concerning drug and alcohol addiction, Dr. Canavan posited that Strait might have felt "intimidated by the system," fearing that an admission of addiction would deprive him of an opportunity to practice law. When a Panel member confronted Strait with Dr. Canavan's hypothesis, Strait conceded that he "did feel that if [he] had put down [his] history of [drug and alcohol] use, * * * certainly [he]'d never get the privilege of practicing law." Nevertheless, Strait repeatedly emphasized that he had answered the question in the negative because he denied having had a problem with intoxicating substances.

When questioned about the negative response he had provided to the question, "Have you or has any business controlled or managed by you ever been charged with * * * larceny * * * in any legal proceeding * * * ?", Strait explained that he had "read that question in the context of a business owned or managed by [him]."

In response to the Conference Panel's inquiry concerning the conflicting responses Strait had provided in his final Certified Statement, in which he had denied having suffered from or having been treated for drug and alcohol addiction but had disclosed his participation in the Fair Oaks outpatient recovery program, Strait reiterated the explanation he had given during his August 1986 interview with Mr. Kenyon. That is, respondent maintained that he had inadvertently transposed the answers to those questions. Strait assured the Conference Panel that he had fully intended to reveal his substance addictions to the Committee on Character in his January 1986 Certified Statement of Candidate.

With respect to his failure immediately to notify the Character Committee of his July 1985 arrest for possession of cocaine and narcotics paraphernalia, Strait testified that he had been unaware of an obligation to do so, and pointed out that he had disclosed the fact of the arrest on his final Certified Statement as well as in his interview with Mr. Kenyon.

2.

The Conference Panel heard the testimony and reports of several highly qualified experts on substance addiction. The overwhelming import of that testimony was that Strait had made a remarkable recovery from alcohol and drug dependence; that the likelihood of his continued sobriety was very good; and that his sobriety had freed him from attitudes and beliefs that had led to the exercise of faulty judgment.

Dr. James A. Cocores, Medical Director of the Fair Oaks Hospital Outpatient Recovery Center, submitted a letter regarding Strait's progress while he was an outpatient in that program. Dr. Cocores testified that Strait had participated enthusiastically and demonstrated a commitment to recovery from his substance addictions. He further informed the Conference Panel that Strait's prognosis for continued sobriety was "very good," remarking that respondent

is the type of patient that keeps addictionologists like myself from burning out. That is, Strait was free of all mood altering substances and developed a more productive manner of living. The program worked because he worked it. There are some people who choose to follow the road to recovery and Strait is an example.

Dorothy Morrissey, a registered nurse and certified alcoholism counselor at Fair Oaks Hospital who had acted as Strait's alcoholism counselor while he had been in the Outpatient Recovery Program from August 1985 to April 1987, testified that Strait had remained drug and alcohol free during his participation in the program, that he had faithfully attended Alcoholics Anonymous meetings while an outpatient, that he had demonstrated "outstanding motivation for treatment and com-

mitment to personal recovery," and that his chances for continued sobriety were "good."

William J. Kane, a member of the New Jersey Bar and a certified alcoholism counselor, testifying concerning Strait's diagnosis of alcoholism and his state of recovery from the disease, concluded on the basis of tests he had administered that respondent "clearly and unquestionably suffered from alcoholism and drug dependency." On the basis of a comparison between the results obtained from an August 1985 Michigan Alcoholism Screening Test (MAST) administered to Strait by Fair Oaks, and the January 1988 MAST results, Kane concluded that "Strait presented a greater degree of growth, frankness, maturity and acceptance in January 1988 than he showed in 1985." Kane further testified that the prognosis for Strait's continued sobriety was favorable, and that in his opinion Strait was "fit and qualified" to be admitted to the practice of law.

Dr. Canavan also concluded that the prognosis for respondent's continued sobriety was "excellent," based on three factors: Strait's successful completion of the Fair Oaks Outpatient Program, the fact that he had totally abstained from the use of drugs and alcohol since August 1985, and his faithful participation in AA and NA. Dr. Canavan noted that with each year of ongoing recovery, the likelihood of continued sobriety would improve. In his opinion Strait had achieved substantial personal growth and had overcome the drug and alcohol addiction that had led to the exercise of poor judgment in the past.

Dr. Arthur Schwartz, a professor of psychiatry at the University of Medicine and Dentistry of New Jersey, who had examined Strait in December 1987 at the behest of the Conference Panel, presented his findings to the Conference Panel. Prior to testifying, Dr. Schwartz had submitted to the Conference Panel a report setting forth his prognosis for respondent's continued sobriety. In that report, Dr. Schwartz had stated that he "would be more sanguine about [Strait's] chances of maintain-

ing sobriety if he [Strait] were regularly attending AA or NA meetings or was affiliated with Lawyers [Concerned with] Lawyers." During his testimony, Dr. Schwartz made clear that at the time he had written that report, he had been misinformed about Strait's participation in those recovery groups. On learning that Strait had been and continues to be an active member of AA, NA, and LCL, Dr. Schwartz remarked, "I am more sanguine." Dr. Schwartz further testified that the fact that Strait had remained sober for what had then been two-and-one-half years weighed favorably "in terms of his capacity to remain drug or alcohol free." According to Dr. Schwartz:

> The other positive thing [reflecting on a prognosis for continued sobriety] in my opinion, in favor of Strait is his age. He's 36 years of age. [A]fter about age 40, people with a drug abuse history * * * tend to have a lower likelihood of continuing that abuse or resuming such abuse, and he's pretty near that age.

Dr. Schwartz also stated that Strait's history of criminal behavior, which had been largely attributable to his drug and alcohol addiction, increased the risk that a lapse in recovery might lead Strait to engage in deviant behavior. With respect to respondent's ability to practice law, Dr. Schwartz stated:

> We have no indication that Strait could not, in a judicious fashion, currently carry out the practice of law, certainly in the supervised setting. We have no indication that if he were not abusing drugs—assuming he does not abuse drugs, we have no indication that he would do anything but the best he could for any client.

According to Dr. Schwartz, there was no psychological impediment to respondent's capacity to discharge the obligations of a lawyer.

All of the foregoing experts stressed the importance of Strait's continued participation in recovery groups like AA, NA, and LCL. Drawing on his experience with "impaired" physicians and the guidelines established to govern them, Dr. Canavan suggested that Strait's admission to the practice of law could be subjected to conditions designed to ensure his continued sobriety. Among the conditions specified by Dr. Canavan were confirmation of abstinence from the use of alcohol and drugs through random urine testing, documentation proving

regular attendance at AA, and work in a supervised setting for a period of two years.

Finally, the Conference Panel had received numerous letters from colleagues and former employers of Strait attesting to his honesty and trustworthiness as well as his legal abilities.

### 3.

Based on the testimony and evidence received, the Conference Panel provided the following reasons to support its recommendation that certification of Strait's good character be withheld:

> The Committee Panel members are disturbed by Strait's lack of candor in his dealings with the Committee on Character, his misleading and deceiving demeanor at Conference, and his lack of repentance for his past transgressions. Indeed, the Panel feels that Strait's dishonesty would present a risk to clients.
>
>    \*    \*    \*    \*    \*    \*    \*    \*
>
> \* \* \* When asked to provide a rationale for failing to indicate his substance abuse problem on the bar application, Strait testified at Conference that he had denied that he had an addiction problem at the time he completed the applications. When presented with the testimony of his expert, however, Strait changed his answer, stating that he felt that disclosure of his substance abuse problem would prevent him from being admitted to the bar.
>
> The Panel is not convinced that alcohol and drug abuse are the only causes of Strait's attitudes. Rather, the Panel feels that Strait presents a personality flaw. \* \* \*
>
> The Panel finds that Strait blames society, his socioeconomic background, and his race for his history of criminal offenses and substance abuse. To date, he has neither accepted responsibility nor expressed repentance for his past transgressions. \* \* \*
>
> \* \* \* [T]here is no evidence to suggest that the applicant understands either the importance of candor or the wrongfulness of his actions[.] [T]he Panel concludes that Strait's failure to disclose immediately his alcohol and drug addictions and his July 1985 arrest for possession of cocaine, together with his misleading and deceiving demeanor at Conference and his lack of repentance for his past transgressions, demonstrate by clear and convincing evidence that he is presently unfit to practice law. The Panel recommends that certification of Strait be withheld.

### B.

The Review Panel conducted hearings, pursuant to *RG.* 304, on March 28, April 6, and June 12, 1989. It considered the

record of the prior proceedings, heard the testimony of Strait himself, and received testimony from two additional witnesses: Lawrence A. Vastolo, a member of the New Jersey Bar since 1965 and chairman of Lawyers Concerned with Lawyers, and Dr. Daniel P. Greenfield, a board-certified psychiatrist specializing in the area of substance-abuse.

Vastolo testified that in his opinion Strait had exhibited a state of recovery from drug and alcohol addiction that reflected his "decision to accept that he was powerless over the substances he was using." Vastolo also noted respondent's faithful attendance at AA and LCL, stressing that honesty and candor are essential components of participation in those groups and of the process of recovery from addiction.

Dr. Greenfield offered his psychiatric opinion regarding Strait's suitability to practice law, "particularly with respect to his prior history of substance abuse." He concluded that respondent presented neither a psychiatric disorder nor a character flaw independent of his addiction problems. Instead, Dr. Greenfield attributed Strait's prior criminal behavior to his substance abuse. Dr. Greenfield considered the discrepancies in the Certified Statements of Candidate to be addiction-related, observing that alcohol and drug addictions are characterized by a denial of affliction and causes clouding of judgment.

Dr. Greenfield testified that in his opinion a relapse was "unbelievably unlikely," advising the Review Panel that the prognosis for continued sobriety is "very good" once a person had maintained recovery status for as long as Strait had. Finally, Dr. Greenfield concluded, from a psychiatric and substance-abuse perspective, that Strait was qualified to practice law. That conclusion was based respondent's active involvement with AA and LCL, his three-and-one-half years of sobriety, the lack of any indication that he would relapse, and the absence of drug-seeking behavior. Dr. Greenfield stressed the importance of continued and regular involvement in recovery groups like AA and LCL.

Based on that testimony and the record of the Conference Panel proceedings, two members of the Review Panel recommended that Strait be certified subject to the following conditions, to remain in place for three years:

1. that he engages in the practice of law in New Jersey only as a partner, shareholder, associate, or employee of at least one other member of the New Jersey Bar or, in the alternative, as a solo practitioner under the supervision of a proctor, who is a member of the New Jersey Bar;

2. that he attends at least one meeting per week of Lawyers Concerned with Lawyers (LCL) and five meetings per week of Alcoholics Anonymous (AA), and have another member of LCL and another member of AA confirm his attendance at the meeting(s);

3. that he undergoes and bears the expense of random urine testing for the presence of alcohol, cocaine, heroin, and marijuana; and

4. that he, another member of LCL, and another member of AA submit quarterly affidavits to the Committee, which affidavits are to demonstrate Strait's ongoing compliance with the above conditions.

The majority concluded that Strait had demonstrated reform and rehabilitation by clear and convincing evidence, noting his candor in the proceedings, his long-time abstinence from the use of drugs and alcohol, and his regular participation in AA and LCL. One member dissented, finding that Strait had continued to display a lack of candor and failed to appreciate the wrongfulness of his actions.

A majority of the Statewide Panel concurred in the determination of the Review Panel that Strait should be certified with conditions, finding that Strait had "rehabilitated himself from his earlier criminal activities" as well as from his drug and alcohol addictions. Furthermore, the Statewide Panel was unable to conclude "that a lack of candor at the proceedings was shown by clear and convincing evidence."

## III.

The standards for evaluating the fitness of a bar applicant to practice law are well settled. This Court has consistently recognized that an applicant seeking bar admission must possess good moral character. *See, e.g., In re Jenkins,* 94 *N.J.* 458, 466–67, 467 *A.*2d 1084 (1983); *In re Matthews,* 94 *N.J.* 59,

75–78, 462 A.2d 165 (1983); *In re Application for Attorney's Licensing*, 21 *N.J.L.* 345 (Sup.Ct.1848). Although we have acknowledged that the concept of "good moral character" is susceptible to different definitions, we have determined that the fitness requirement be "formulated in terms of the qualities of character attorneys must possess to fulfill their obligations to individual clients and to the judicial process." *Jenkins, supra*, 94 *N.J.* at 467, 467 A.2d 1084 (citing *Matthews, supra*, 94 *N.J.* at 97, 462 A.2d 165). We emphasized in *Matthews* that

a bar applicant must possess a certain set of traits—honesty and truthfulness, trustworthiness and reliability, and a professional commitment to the judicial process and the administration of justice. These personal characteristics are required to ensure that lawyers will serve both their clients and the administration of justice honorably and responsibly.

[94 *N.J.* at 77, 462 A.2d 165.]

■ Thus, it is clear that an applicant's appreciation for the importance of honesty and candor is an indispensable ingredient of a finding of fitness to practice law in New Jersey. Indeed, "there is no place in the law for a man who cannot, or will not, tell the truth even when his own interests are involved. In the legal profession particularly there must be reverence for truth." *In re Hyra*, 15 *N.J.* 252, 254, 104 A.2d 609 (1954). Candor throughout the admission process is critical to a finding of fitness to practice law. *Jenkins, supra*, 94 *N.J.* at 470, 467 A.2d 1084.

■ Evidence of reform and rehabilitation is also relevant to determine an applicant's present fitness to practice law. *Jenkins, supra*, 94 *N.J.* at 470–71, 467 A.2d 1084; *Matthews, supra*, 94 *N.J.* at 81, 462 A.2d 165. We have recognized that behavior subsequent to an applicant's disqualifying actions that clearly and convincingly demonstrates rehabilitation may support a finding of present fitness. In *Matthews*, we listed a variety of types of evidence that have been found to be probative of reform and rehabilitation:

In all instances, the applicant must display complete candor in all filings and proceedings required by the Committee on Character. Courts will weigh heavily the applicant's attitude as expressed in hearings before the Board of

Bar Examiners and any reviewing courts and will look for a renunciation of the past misconduct. The absence of any misconduct over a period of intervening years will * * * be noted, and a particularly productive use of one's time subsequent to the misconduct will be credited. Affirmative recommendations from people aware of the applicant's misconduct who specifically consider the individual's fitness in light of that behavior may also be found probative of present good character.

[94 *N.J.* at 82, 462 *A.*2d 165 (citations omitted).]

Application of those principles to the unique facts of this case results in our concurrence with the Statewide Panel's conclusion that respondent has demonstrated present fitness to practice law. Although Strait's prior criminal history—particularly his arrest in July 1985 for possession of cocaine—in combination with his addiction to intoxicating substances, raises serious concern regarding his fitness to practice law, we conclude that the record establishes that respondent's attitude and behavior subsequent to those acts demonstrate personal reform and rehabilitation. We offer the following observations regarding the issue of Strait's candor in the bar-admission process.

The record makes clear that respondent had suffered from substance addiction for much of his life. We have acknowledged in other contexts that alcoholism is a disease that adversely affects the exercise of good judgment and clear thinking, and is frequently characterized by denial of its existence. *In re Willis*, 114 *N.J.* 42, 49, 552 *A.*2d 979 (1989); *Clowes v. Terminix Int'l, Inc.*, 109 *N.J.* 575, 590–95, 538 *A.*2d 794 (1988); *In re Hein*, 104 *N.J.* 297, 302, 516 *A.*2d 1105 (1986). Those same cases make clear that alcoholism is not a defect in character or personality. The expert testimony advanced in these proceedings strongly corroborates that conclusion. Strait testified that prior to his arrest in July 1985, he had denied being addicted to drugs and alcohol. We find credible respondent's explanation that the negative responses he had provided in the December 1984 and June 1985 Certified Statements to the questions concerning substance addiction were the product of that denial—that is, the responses had undoubtedly been

incorrect, but Strait had not perceived that they were untruthful.

We also accept as fully credible respondent's explanation that he had denied being charged with crimes involving fraud and larceny because he had misread the question on the Certified Statements as addressing criminal convictions by a controlled business enterprise. We note that Strait had attached to those very Statements a full and accurate list of his prior criminal convictions, including those involving larceny.

Nor can we conclude that Strait had sought to conceal his treatment for substance addiction or his July 1985 narcotics arrest. That information was provided both in the Certified Statement of Candidate that Strait had submitted in January 1986 and in the August 1986 interview with Kenyon. Acknowledging that respondent's applications had been inartfully and perhaps carelessly drafted, we cannot conclude from this record that his responses were intended to deceive or mislead the Committee on Character.

The record establishes by clear and convincing evidence that Strait has demonstrated personal reform and rehabilitation in connection with his addiction to intoxicating substances. From the time that respondent entered the outpatient recovery program at Fair Oaks Hospital approximately one week after his arrest for possession of cocaine, he exhibited a commitment to recover from substance addiction. He has been steadfast in his attendance at AA and LCL, and assists other alcoholics at AA in their recovery programs. The expert testimony advanced during these proceedings is highly favorable with respect to a prognosis for respondent's continued sobriety. Further, the expert testimony establishes a clear causal connection between Strait's alcohol and drug addictions and his prior criminal conduct, which reflected adversely on his character and fitness to practice law.

We also note Strait's record of community service and employment in the legal profession. He has lectured school chil-

dren and young adults about the dangers of drugs and alcohol. He has also maintained continuous and satisfactory employment with several firms as a law clerk. Strait's application for admission has prompted an outpouring of support from colleagues and former employers who are aware of his history, his recovery, and his present behavior, and who attest to his legal ability and good moral character. Strait's current employer has submitted a letter offering respondent a position as an associate with his law firm on Strait's admission to the bar, and has also volunteered to serve as his proctor.

Based on the evidence in the record establishing that respondent has overcome his dependency on drugs and alcohol, that the addiction was the primary source of his problems with the law, and that his chances for continued sobriety are favorable, we are satisfied that Strait deserves an opportunity to practice law, subject to the conditions prescribed by the Review Panel. Accordingly, we affirm the decision of the Statewide Panel of the Committee on Character.

*For affirmance*—WILENTZ, C.J., and CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN, JJ.—7.

*For reversal*—None.