**In re Steven Gary POLIN, Applicant.**

**No. 89–1443.**

District of Columbia Court of Appeals.

Submitted Oct. 17, 1990.
Decided Aug. 27, 1991.

Steven M. Buckman, submitted a brief for applicant.

William J. Spriggs and Ann Lea Harding, were on the amicus curiae Brief on behalf of The Lawyer Counselling Committee.

Before NEWMAN *, KERN, and BELSON **, Senior Judges.

BELSON, Senior Judge:

Applicant Steven Polin seeks admission to the Bar of the District of Columbia.[1] After a hearing, the Committee on Admissions recommended that Polin be admitted despite his December, 1984 conviction for conspiracy to possess cocaine with the intent to distribute it. Because of the serious nature of Polin's criminal conduct, we ordered him to show cause why his application should not be denied, calling particular attention to the relatively short duration of his period of rehabilitation compared to those of the three applicants in *In re Manville (Manville II)*, 538 A.2d 1128 (D.C.1988) (en banc). Although Polin has demonstrated persuasively that he has made outstanding progress toward rehabilitation, we conclude that under all the circumstances, including in particular the relatively short period of time that has passed since his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and his subsequent release from a halfway house in January of 1987, he has failed to establish that he is so fully rehabilitated that he can be deemed at this time to have the good moral character required for admission to the bar. Therefore, we deny Polin's application for admission.

I

In 1977, while an employee of the United States Department of Justice and an evening law school student, Polin began using cocaine. By 1980, as Polin became addicted to the drug and his need for it increased, he turned to dealing in cocaine to support his habit. According to information supplied by the government at Polin's subsequent sentencing, his bank accounts began to have unexplained deposits of substantial amounts, totalling, for example, over $25,000 in 1982. In 1983, his supplier was arrested and agreed to cooperate with the authorities in an investigation of Polin. While wearing a recording device, the supplier had a meeting with Polin at the Department of Justice at which Polin acknowledged a debt of $13,600 to his supplier for cocaine Polin had received.

Not long after the taping of Polin's incriminating conversation, he was charged with conspiracy to possess cocaine with intent to distribute it. Polin continued to use marijuana and began to drink heavily

---

* Judge Newman was an Associate Judge of the court at the time of submission. His status changed to Senior Judge on March 11, 1991.

** Judge Belson was an Associate Judge of the court at the time of submission. His status changed to Senior Judge on July 24, 1991.

1. We resolve in Polin's favor the question whether his application is properly before us. Polin sat for the July, 1983 District of Columbia Bar examination. After being informed that he had been unsuccessful, he petitioned for a regrading. He was informed by letter dated March 7, 1984 that he had passed. The letter required that Polin complete an enclosed supplemental questionnaire within ten days or his admission would be delayed. Because Polin did not contact the Committee until twenty months later and because he did not file his application until December of 1988, we must decide whether Polin can reactivate his application. Under District of Columbia Court of Appeals Rule 46(g)(3), as it read in December of 1988:

[a]n applicant who fails to complete admission by taking the oath and signing the roll of attorneys within one year from the date of the order containing the applicant's name or certification *must file an affidavit with the Secretary accounting for the intervening time.* Upon consideration of the affidavit the Committee may reapprove the applicant and file a supplemental motion. (Emphasis supplied).

We agree with the Committee that this is the most "nearly analogous" rule that can be applied to Polin's situation and that because Polin has satisfied its requirements he was properly given an opportunity to reactivate his application.

We further agree with the Committee that under the new version of Rule 46(g)(3), effective August 1, 1989, an applicant would have to respond to any formal Committee inquiry within ninety days or else explain that delay in an affidavit within one year. Therefore, were the current Court of Appeals Rules applicable to Polin, he could not reactivate his 1983 application.

after his arrest but he states his cocaine use ceased. At his trial, Polin perjured himself, as he later admitted, in an effort to avoid conviction. After being convicted in 1984, Polin served twenty months in a federal prison. He then spent three months in a halfway house from which he was released in January, 1987. During his time in prison, while living in the halfway house, and until the end of his probation in July, 1987, Polin was systematically tested for drugs and tested negative on all occasions.

Since his conviction, Polin apparently has made great strides towards rehabilitating himself. The week before he began serving his sentence, Polin began attending Narcotics Anonymous and Alcoholics Anonymous meetings. Although Narcotics Anonymous meetings were not available to him in prison, he continued to attend Alcoholics Anonymous meeting while serving his sentence. After being released from the halfway house, he lived in an Oxford House, one of several residences run by and for recovering addicts and alcoholics. Polin attended seven to ten Narcotics Anonymous or Alcoholics Anonymous meetings a week and arranged such meetings twice a month for prisoners at the District of Columbia Corrections facilities at Lorton, Virginia. He also volunteered in the Lawyers Counselling Program of the District of Columbia Bar. At his *ex parte* hearing, numerous persons came forward to testify concerning Polin's honesty and his concern for others suffering from addictions.

We must also note, however, that the Committee solicited written evaluations from the prosecutor and the judge who took part in Polin's trial, and received comments that do not further Polin's cause. The United States Attorney for the District of Maryland, Breckinridge Willcox, stated in a letter that because Polin testified at his trial that he had not been dealing in cocaine and because available evidence, in-

cluding the statements of his customers secured after trial, strongly corroborated the government's position that in fact Polin had been a distributor, "[the prosecution] gave considerable thought to a subsequent prosecution for perjury." In addition, the Honorable Herbert F. Murray wrote that he "would be reluctant to support [Polin's] application" because of the seriousness of the crime, the length of time that Polin was involved in criminal activity, and the fact that Polin had never been pardoned.[2]

On December 18, 1989, the Committee on Admissions, after a full hearing on the matter, unanimously recommended (one member not participating) that Polin be admitted as a member of the District of Columbia Bar, having found by clear and convincing evidence that Polin now is of good moral character and fit to practice law. After the Committee submitted its affirmative recommendation to this court, we issued an order to show cause why his application should not be denied. Polin has responded with a thorough brief supporting his application.

## II.

We begin by reaffirming that this court will "accept findings of fact made by the Committee unless they are unsupported by substantial evidence of record." *In re Manville (Manville I)*, 494 A.2d 1289, 1293 (D.C.1985). This court also "afford[s] the Committee's recommendations some deference.... Nevertheless, the ultimate decision regarding admission or denial of admission remains for this court to make." *Id.; see also In re Baker*, 579 A.2d 676, 680 (D.C.1990).

At the time of Polin's application, District of Columbia Court of Appeals Rule 46(e) required an applicant for the Bar to demonstrate by a "preponderance of the evidence" that he or she is qualified and fit to practice law in the District of Columbia.[3]

---

**2.** According to the record before us, Polin has not applied for, nor has he received, a pardon for his offenses.

**3.** Effective August 1, 1989, Rule 46(e) now requires the applicant to prove by "clear and con-

vincing evidence" his or her qualifications for the bar. Because Polin submitted his application in December, 1988, this court will use the "preponderance of the evidence" standard rath-

We have stressed that the Committee should focus on the present moral character of the applicant rather than the applicant's character at some time in the past. *See Manville I, supra,* 494 A.2d at 1295. In *Manville I* this court set out a non-exhaustive list of eleven factors that may be considered in determining whether an applicant whose background is tainted by a criminal conviction is of good moral character at the time of application, and thus meets that requirement for admission to the bar.[4] *Id.* at 1296–97. The Committee used these factors in evaluating Polin's application.

In *Manville II* this court admitted to the bar three applicants who many years earlier had committed serious crimes. We reiterate strongly that our "opinion in *Manville II* is not a signal that henceforth it will be relatively easy for persons who have committed offenses less heinous than manslaughter, armed robbery, or illegal drug transactions to become members of the District of Columbia Bar." *In re Demos,* 579 A.2d 668, 672 (D.C.1990) (en banc). In evaluating Polin's application, "there is much more involved than simply weighing the seriousness of [Polin's] conviction alongside the offenses committed by Manville, Brooks, and Strauss, and then assigning the applicant's conviction a weight commensurate with its relative seriousness." *Id.* In general, "an applicant with a background of a conviction of a felony or other serious crime must carry a very heavy burden in order to establish

good moral character." *Manville II, supra,* 538 A.2d at 1134 n. 7.

In *Manville II,* we considered en banc the applications of Manville, Brooks, and Strauss. *Id.* at 1133–35. Manville had plead guilty to voluntary manslaughter in 1973 and had served three years in jail. *Id.* at 1129–30. Brooks had pled guilty to armed robbery in 1970 and had served seven years of his sentence. *Id.* at 1131. Strauss was convicted of narcotics distribution in 1962 and 1966 and had spent five years in prison. *Id.* Each had gone on after their convictions to lead exemplary lives. *Id.* at 1130–32. We admitted all three into the District of Columbia Bar in 1988. *Id.* at 1129. All three applicants had demonstrated their respective rehabilitations over a period of fifteen years or more from the time of their convictions until the time we admitted them. All had led exemplary lives for over eleven years from the time they had been released from the prison system. *Id.* at 1130–32.

With regard to the duration of the period of rehabilitation, Polin's application suffers by comparison with those of the *Manville II* applicants. Polin was arrested for narcotics distribution seven years ago and has been out of the halfway house for four and a half years. While we agree with the statement in appellant's brief that we cannot set a fixed number of years of good behavior as an essential part of the proof of rehabilitation, we are not persuaded that the duration and quality of Polin's good behavior, impressive though it is, suffices to establish present good moral character.

---

er than the "clear and convincing" standard employed by the Committee.

4. The factors that may be considered include:
  1. The nature and character of the offenses committed.
  2. The number and duration of offenses.
  3. The age and maturity of the applicant when the offenses were committed.
  4. The social and historical context in which the offenses were committed.
  5. The sufficiency of the punishment undergone and restitution made in connection with the offenses.
  6. The grant or denial of a pardon for offenses committed.
  7. The number of years that have elapsed since the last offense was committed, and the

presence or absence of misconduct during that period.
  8. The applicant's current attitude about the prior offenses (e.g., acceptance of responsibility for and renunciation of past wrongdoing, and remorse).
  9. The applicant's candor, sincerity and full disclosure in the filings and proceedings on character and fitness.
  10. The applicant's constructive activities and accomplishments subsequent to the criminal convictions.
  11. The opinions of character witnesses about the applicant's moral fitness.
*Manville I, supra,* 494 A.2d at 1296–97 (footnotes omitted).

The criminal conspiracy Polin engaged in lasted over a period of more than three years from December, 1980 to February, 1984, and his rehabilitation over the last four and a half years since his release from the halfway house has not been a great deal longer. In *Manville II, supra,* we stated that "we believe that a few persons who have been convicted of felonies may become sufficiently rehabilitated to meet the demanding ethical requirements of the legal profession." 538 A.2d at 1137. If Polin continues on his present course, it is probable that he will be admitted into the circle of those who have shown such rehabilitation. In our view, however, it is premature to draw that conclusion despite his laudable efforts to date.[5]

5. *See, e.g., In re Cason,* 249 Ga. 806, 294 S.E.2d 520 (1982) (court denied admission into the bar to applicant, finding that applicant's five year rehabilitative period without doing more than "those things he or she should have done throughout life" is insufficient to overcome applicant's criminal activity over a nine-year period); *In re George B.,* 297 Md. 421, 466 A.2d 1286 (1983) (court denied admission into the bar to applicant, finding that six year rehabilitative period "to be of insufficient duration" where applicant was convicted of attempted armed robbery of a bank involving an exchange of gunfire); *Application of David H.,* 283 Md. 632, 392 A.2d 83 (1978) (court denied admission into the bar to applicant who five years earlier had committed numerous thefts over a four-year period); *In re Taylor,* 293 Or. 285, 647 P.2d 462 (1982) (court denied admission into the bar to applicant who five years earlier had perjured himself to secure acquittal to a charge of theft and seven years earlier had discharged his student loans in bankruptcy with no extraordinary hardship that would ordinarily compel resort to bankruptcy); *In re Trygstad,* 435 N.W.2d 723 (S.D.1989) (court denied readmission to the bar to attorney convicted of distribution of drugs, finding that his laudable rehabilitative efforts over the past five years were insufficient to overcome the gravity of his past criminal conduct); *In re Wright,* 102 Wash.2d 855, 690 P.2d 1134 (1984) (court denied admission to applicant who had been convicted of murder and pled guilty to possession of heroin, observing that applicant had been discharged from parole only one year earlier and that his successful rehabilitative efforts since his conviction were insufficient to overcome his past criminal activity); *cf. Kwasnik v. State Bar,* 50 Cal.3d 1061, 791 P.2d 319, 269 Cal.Rptr. 749 (1990) (court admitted into the bar a New York attorney even though he had been involved twenty years before in an accident while drinking that killed another and had avoided ten years ago paying a wrongful death judgment as a result of that accident by discharging it in bankruptcy, stating that "[t]he evidentiary significance of an applicant's misconduct is greatly diminished by the passage of time and by the absence of similar, more recent misconduct"); *Pacheco v. State Bar,* 43 Cal.3d 1041, 741 P.2d 1138, 239 Cal.Rptr. 897 (1987) (court admitted into the bar an applicant previously denied admission four years earlier, finding that the previous grounds for denying admission, i.e., counselling a murder witness on how to avoid a subpoena, were "too old" to overcome applicant's evidence of rehabilitation); *In re Dileo,* 307 So.2d 362 (La.1975) (rejecting a rigid rule that a minimum of five years from the time of a non-lawyer's transgression must elapse before being considered for admission, the court denied admission after only a four-and-a-half-year rehabilitation period following the applicant's failure to pay transfer tax on six ounces of marijuana and violation of his probation, but ordered that he be certified for admission at the end of five years if he continues to rehabilitate himself); *In re James G.,* 296 Md. 310, 462 A.2d 1198 (1983) (noting that a significant amount of time—16 years—had passed since applicant had been convicted of uttering and forgery, the court admitted applicant into the bar based on evidence of his significant rehabilitation and his recent admission into the District of Columbia Bar); *In re A.T.,* 286 Md. 507, 408 A.2d 1023 (1979) (court admitted applicant into the bar, finding that a "significant and substantial" amount of time—thirteen years—had passed since his last conviction during which he had successfully rehabilitated himself from his previous use of illicit drugs and criminal activity); *In re Matthews,* 94 N.J. 59, 462 A.2d 165 (1983) (court denied admission into the bar to applicant who eight years ago engaged in a fraudulent financial scheme and failed to file tax returns for three years, finding that he failed to "produce evidence of positive acts" that demonstrated his rehabilitation). *But see In re Wonais,* 78 Ill.2d 121, 34 Ill.Dec. 843, 398 N.E.2d 834 (1979) (court readmitted applicant into the bar three years after he had pled guilty to the offense of solicitation to commit bribery, noting that "the period of time between a disbarment on consent and a petition for reinstatement is not dispositive of the determination of rehabilitation"); *In re Haukebo,* 352 N.W.2d 752 (Minn.1984) (court held that applicant could be admitted to the bar within three years of his three convictions for driving while intoxicated if he showed sufficient reform and rehabilitation to overcome his past negative moral character); *Appeal of Estes,* 580 P.2d 977 (Okla.1978) (court admitted applicant into the bar within six years of his guilty plea to two counts of conspiracy to import marijuana, finding sufficient evidence of applicant's rehabilitation); *In re Monagham,* 126 Vt. 53, 222 A.2d 665 (1966) (court permitted applicant to take the bar examination within four years of committing a

Appellant's brief places special emphasis on the recent opinion of the New Jersey Supreme Court in *In re Strait*, 120 N.J. 477, 577 A.2d 149 (1990). Appellant's statement that the case is striking in its similarity to Mr. Polin's is only partially correct. It is true that both Strait and Polin had been addicted to drugs and had experienced a long history of drug use some time prior to applying for admission to the bar. In our view, however, Polin's conduct was more reprehensible than Strait's in several important particulars. Unlike Polin, Strait was not convicted of an offense in the nature of drug dealing. There is no indication in the court's statement of facts that he was ever a drug dealer, as was Polin. *See id.* at 150–51, 577 A.2d 149. Unlike Polin, Strait did not contest the criminal charges against him, did not commit perjury in trying to avoid conviction, and did not commit his offenses while employed as a paralegal with the United States Department of Justice or a comparable state agency. Accordingly, even if we assume that we would reach the same result as did the New Jersey Supreme Court in a case exactly like Strait's, that would not forecast our opinion here.

In reaching this conclusion, we are not unmindful of the fact that, as is demonstrated by the findings of the Committee, Polin has made truly commendable progress in overcoming his own addiction and in helping others who suffer from similar addictions. It is by no means our purpose to discourage the applicant from continuing to follow the laudable path he appears to have chosen. To the contrary, we think it appropriate for us to indicate that, if he continues along the same path, it appears from this record to be most likely that he will be able at some future time to establish the requisite good moral character.[6]

In sum, our consideration of the entire record leaves us unpersuaded that Polin now possesses "those qualities of truth-speaking, of a high sense of honor, of granite discretion, of the strictest observance of fiduciary responsibility, that have … been compendiously described as [the] 'moral character'" necessary for the practice of law. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 247, 77 S.Ct. 752, 760–61, 1 L.Ed.2d 796 (1957) (Frankfurter, J., concurring).

We, therefore, deny Polin's application for admission to the bar of the District of Columbia.[7]

*So Ordered.*

NEWMAN, Senior Judge, concurring in result.

I join in denying Polin's application for admission. In light of what my Brother Belson opines about future admissions if Polin continues his present course of rehabilitation, I write separately to reiterate my views expressed in *In re Manville*, 538 A.2d 1128, 1138 (D.C.1988) (Newman, J., dissenting).

series of misdemeanors related to his abuse of alcohol, finding that "a reasonable time ha[d] elapsed" during which he had demonstrated rehabilitation); *In re Walgren*, 104 Wash.2d 557, 708 P.2d 380 (1985) (court concluded that "sufficient time ha[d] elapsed following [applicant's] suspension and disbarment in order for him to prove … he ha[d] been rehabilitated" from his RICO conviction more than four years ago arising from his conduct as a member of the state legislature).

6. We agree with the view of the Oregon Supreme Court in *In re Rowell* that probationary or conditional admission is inappropriate:

if this court is convinced that applicant is presently of good moral character, he should be admitted. If the court is not convinced, his application for admission should be denied. If a lawyer is of good moral character, the lawyer should be able to start a legal career on the same basis as other lawyers. 305 Or. 584, 592, 754 P.2d 905, 909 (1988).

7. The Committee should have conducted an independent investigation into Polin's behavior. In general, an independent investigation should be conducted when the applicant has committed a "felony or other serious crime." *See Manville I, supra*, 494 A.2d at 1294.