**In re Darrin Paul SOBIN, Applicant.**

**An Applicant for Admission to the Bar of the District of Columbia Court of Appeals.**

**No. 93–BG–304.**

District of Columbia Court of Appeals.

Submitted March 17, 1993.

Decided Nov. 10, 1994.

Robert E. Jordan, III, Washington, DC, submitted a brief for the applicant, with whom Maureen O. Ward and Francoise M. Carrier, were on the brief.

Before KING and SULLIVAN, Associate Judges, and BELSON, Senior Judge.

SULLIVAN, Associate Judge:

Darrin Paul Sobin passed the July 1992 Bar examination for the District of Columbia and is an applicant for admission to the Bar. The Committee on Admissions (Committee) recommended that Sobin be admitted to the Bar, despite Sobin's felony convictions for conspiracy to manufacture a controlled substance and aiding and abetting both interstate prostitution and interstate transportation in aid of interstate racketeering.[1] We

---

1. As a result of Sobin's disclosure of his felony convictions, the Committee instructed Sobin to attend a meeting of the Moral Character Sub-

committee on November 17, 1992. Subsequently, Sobin requested a formal hearing regarding his application. This hearing took place on Jan-

conclude, considering the totality of the circumstances, that Sobin has established that he has the present good moral character required for admission to the Bar. Accordingly, we grant his application for admission.

## I.

In 1977, when Sobin was eleven years old, his mother and father started an escort business. In 1982, when Sobin was sixteen years old, his mother asked him to work in the business part-time answering telephones. Sobin agreed to do so, and was compensated at the rate of four dollars an hour. Although as Sobin got older he began to question whether the escort business was involved in prostitution or other illegal activity, he continued to work in the service throughout his second year of college.[2]

In mid 1985, at the age of nineteen, Sobin decided to leave his mother's escort business and in the summer of 1985 went to California to work on his uncle's cattle ranch. Shortly after his arrival, Sobin's mother arrived in California and decided to start marijuana farming. Sobin explained to his uncle that he did not want to be involved in the marijuana operation, and his uncle agreed that he would continue to work exclusively for the cattle ranch. Soon after this conversation, however, his uncle decided that the marijuana operation was being poorly run, and Sobin gave in to his uncle's demands to help out with the marijuana crop. Over the next six weeks, Sobin irrigated the marijuana plants, dug ditches, gathered and laid pipes and opened taps.

As Sobin packed up to return to school in Washington, D.C., he was detained by law enforcement authorities who arrived to execute a search warrant on his uncle's property. After his return to Washington, D.C., Sobin learned that he had been indicted in California on federal charges relating to the marijuana operation.[3]

On May 19, 1987, at age twenty-one, Sobin pled guilty in the United States District Court for the Eastern District of California to one felony count of conspiracy to manufacture a controlled substance. Sobin received a suspended sentence, and was placed on probation for five years, with the requirement that he perform 200 hours of community service.

Meanwhile, in the course of executing search warrants in connection with the marijuana operation, the California authorities discovered records relating to his mother's escort service in Washington. As a result of the California search, and a subsequent Washington search of Sobin's residence, Sobin was indicted in the District of Columbia in 1987 on a number of charges relating to his mother's escort service.

In September 1987, Sobin and fourteen other defendants went to trial in the District of Columbia and were convicted on all counts. Specifically, Sobin was convicted of one count of aiding and abetting in interstate prostitution in violation of 18 U.S.C. § 2421 (1988), and four counts of aiding and abetting interstate transportation in aid of interstate racketeering in violation of 18 U.S.C. §§ 2, 1952 (1988).

On July 14, 1988, United States District Court Judge June L. Green suspended Sobin's sentence and placed him on two years

uary 5, 1993. On March 17, 1993, the Committee issued its finding that Sobin had met his burden of demonstrating present good moral character and recommended his admission to the Bar. On June 15, 1993, this court remanded the application to the Committee with instructions that Sobin address four specific issues surrounding the answers supplied on his application.

A second hearing was held on July 12, 1993, at which time the Committee questioned him about the four issues. On August 17, 1993, the Committee issued supplemental findings and once again recommended that Sobin be admitted to the Bar. On September 21, 1993, this court remanded the record in this matter to the Committee to amplify the record with a transcript of Sobin's sentencing in the District Court, and Sobin's probation records. The Committee forwarded the requested documents to this court on November 24, 1993. On February 23, 1994, this court issued an order directing Sobin to show cause why his application should not be denied within thirty days. Sobin filed a brief in response to this court's order.

2. Sobin matriculated at George Washington University, in Washington, D.C.

3. Sobin was charged with two counts of conspiracy to manufacture a controlled substance in violation of 21 U.S.C. § 841(a)(1) (1988).

probation with a requirement that he perform 200 hours of community service. The sentence imposed on Sobin, who was twenty-two years old at the time, was under the federal youth corrections act (since repealed) in order to permit expungement of his record.[4] Sobin received early discharges from both terms of probation.[5]

## II.

■ Rule 46 provides that bar applicants must demonstrate good moral character and fitness to practice law. D.C.App.R. 46(d)[6] and (e)[7]. In reviewing recommendations of the Committee on Admissions, we stated in *In re Mustafa*, 631 A.2d 45 (D.C.1993) that "[t]his court will accept findings of fact made by the Committee unless they are unsupported by substantial evidence of record, will make due allowance for the Committee's opportunity to observe and evaluate the demeanor of the applicant where relevant, and will afford the Committee's recommendations some deference...." *Mustafa, supra,* 631

A.2d at 47 (citations omitted). Moreover, a criminal conviction does not *per se* require exclusion of the applicant from the Bar. *See In re Polin,* 630 A.2d 1140 (D.C.1993) (*Polin II* ) (applicant admitted six and one half years after his conviction for cocaine distribution); *In re Manville,* 538 A.2d 1128, 1132 (D.C.1988) (en banc) (*Manville II* ) (applicants admitted after convictions on various criminal offenses). Rather, the totality of the circumstances surrounding the application must be taken into account. *See In re Polin,* 596 A.2d 50, 51 (D.C.1991) (*Polin I* ); *In re Manville,* 494 A.2d 1289, 1295 (D.C. 1985) (*Manville I* ).[8]

## III.

■ While the present case and *Mustafa* share similarities,[9] in our view, two critical distinctions require this court to reach a different conclusion here. First, in *Mustafa,* we denied admission to the applicant [10] holding that "on the record ... particularly the short period of time that has elapsed since

**4.** The other defendants appealed their convictions, and the United States Court of Appeals for the D.C. Circuit reversed the convictions concluding that an erroneous jury instruction had been given; none of the other defendants were retried. *See United States v. Jones,* 285 U.S.App. D.C. 294, 909 F.2d 533 (1990). Sobin initially appealed along with the others, but on the advice of counsel dropped his appeal before the case was decided believing that expungement was preferable to an overturned conviction, and that pursuing the appeal would not advance his interests.

**5.** In fact, on March 12, 1990, when Sobin was discharged from probation, Judge June L. Green set aside his conviction pursuant to 18 U.S.C. § 5021(b) (1988).

**6.** *Moral character and general fitness to practice law.* No applicant shall be certified for admission by the Committee until the applicant demonstrates good moral character and general fitness to practice law. The Committee may, in its discretion, give notice of the application by publication in a newspaper or by posting a public notice.

**7.** *Quantum and burden of proof.* The applicant shall have the burden of demonstrating, *by clear and convincing evidence,* that the applicant possessed good moral character and

general fitness to practice law in the District of Columbia.

**8.** In *Manville I, supra,* 494 A.2d at 1295–96, we set forth a non-exhaustive list of eleven factors that should be taken into account in weighing the application for admission of one who has been convicted of a crime. Although we do not discuss each in our analysis convicted of a crime. Although we do not discuss each in our analysis here, we have considered them as far as applicable in reaching our decision.

**9.** Both Sobin and Mustafa were outstanding law students; remorseful about their prior misdeeds; and were recommended by the Committee for admission to the District of Columbia Bar.

**10.** The applicant, in his position as co-chief justice of the law school's moot court team had converted some of the team's money for his personal use. Prior to the revelation of his conduct by his co-chief justice to the school, the applicant repaid all the money he had misappropriated. The school held a hearing and concluded that the applicant had always intended to repay the funds, and disposed of the matter by placing a letter of censure in his law school file. The applicant was forthcoming with the Committee on Admissions for the District of Columbia Bar about the incident, and the Committee unanimously recommended that the applicant be admitted to the Bar.

his misconduct,[11] [the applicant] has failed to establish that he has the good moral character required for admission to the Bar." *Mustafa, supra,* 631 A.2d at 46. While we declined to formulate a *per se* rule as to the length of time which must pass between the applicant's conduct and the applicant's admission to the Bar, we note that Sobin's conduct occurred over ten years ago. *See Polin I, supra.*

Moreover, since Sobin's participation in his family's criminal enterprises, it appears from the record that he has led a productive adult life. In fact, some years after his conviction in the United States District Court here, Sobin served as an intern for Judge June L. Green, who presided over his case, and also has served as a law clerk in the office of Bar Counsel. Furthermore, both Judge June L. Green and the Bar Counsel have written recommendations in favor of his admission.

While this court did not, and does not, take a bar applicant's criminal conviction(s) lightly, we are satisfied that our review of the circumstances surrounding Sobin's initial foray into his family's criminal enterprises, coupled with Sobin's candor with the Committee,[12] remorsefulness about his past misdeeds, and his prolonged effort to make a meaningful contribution to society, tips the scale in favor of Sobin's admission to the Bar. As we noted in *Mustafa* "[i]t is by no means our purpose to discourage the applicant from continuing his positive personal and professional development." *Mustafa, supra,* 631 A.2d at 47 (quoting *Polin I, supra,* 596 A.2d

at 55).[13] We believe our decision today is consistent with encouraging individuals who have had past troubles to "turn over a new leaf" and to seek admission to the Bar.

Second, unlike the applicant in *Mustafa,* Sobin's conduct occurred *prior* to law school during his teenage years of sixteen to nineteen. While a certain level of awareness as to the ethical obligations of a lawyer may be imputed to a third year, second semester law student (*Mustafa*), the same level of awareness, should not be attributed to a teenager who has not yet begun the study of law.

Therefore, considering the totality of the circumstances, we conclude that Sobin has sustained his burden of proof to demonstrate by clear and convincing evidence that he possesses good moral character and general fitness to practice law in the District of Columbia. D.C.App.R. 46(e). Accordingly, we grant Sobin's application for admission to the Bar of the District of Columbia.

*So ordered.*

---

11. This court considered Mustafa's application only two and a half years after the misconduct had occurred.

12. Although the record in this case had to be remanded to the Committee on two occasions for clarification and further explanation from Sobin with reference to his responses to some questions on his application, we concur with the Committee's conclusion that any negative implications concerning his character that can be inferred from these responses was far outweighed by the strong endorsements Sobin received from those who worked with him.

13. Polin (the applicant) and Sobin engaged in rehabilitative conduct after their criminal convictions. Unlike Polin, who was convicted of drug distribution, Sobin was a minor participant in the family's criminal enterprises. Unlike Polin, who committed perjury in an attempt to avoid conviction, Sobin acknowledged his wrongful conduct and accepted appropriate punishment. Unlike Polin, who was an evening law student employed at the Department of Justice as a paralegal when the drug distribution offense occurred, Sobin's conduct occurred during his teenage years. Finally, the presiding judge in Polin's case was reluctant to support Polin's application for admission, while Judge June L. Green, the presiding judge in Sobin's case, unequivocally supported Sobin's application for admission, and even employed Sobin as a legal intern in her chambers.