864 So.2d 108 (2003)
In re Kelle HINSON-LYLES.
No. 2002-OB-2578.
Supreme Court of Louisiana.
December 3, 2003.
Rehearing Denied January 16, 2004.
*109 Schiff Law Corporation, Leslie J. Schiff, Opelousas, Counsel for Applicant.
Charles B. Plattsmier, Baton Rouge, Daniel A. Webb, New Orleans, Harry J. Philips, Jr., Baton Rouge, Counsel for Respondent.

ON APPLICATION FOR ADMISSION TO THE BAR
PER CURIAM.
This matter arises from a petition by Kelle Hinson-Lyles seeking admission to the Bar of the State of Louisiana. For the reasons that follow, we deny the petition.

UNDERLYING FACTS AND PROCEDURAL HISTORY
In her application to sit for the July 2002 Louisiana bar examination, petitioner *110 disclosed that she was convicted of a felony sexual offense in 1999. By letter dated June 12, 2002, the Committee on Bar Admissions ("Committee") notified petitioner that in light of her conviction, she would not be certified for admission to the practice of law. A majority of this court subsequently granted petitioner permission to sit for the bar, subject to the condition that upon her successful completion of the exam, she apply to the court for the appointment of a commissioner to take character and fitness evidence.[1]In re: Hinson-Lyles, 02-1805 (La.7/3/02), 819 So.2d 1027. Petitioner successfully passed the essay portion of the July 2002 bar exam. We thereafter appointed a commissioner to take evidence and report to this court whether petitioner possesses the appropriate character and fitness to be admitted to the bar and allowed to practice law in the State of Louisiana. We also authorized the Office of Disciplinary Counsel to conduct an investigation into petitioner's qualifications to be admitted to the bar.

Proceedings before the Commissioner
The commissioner conducted a character and fitness hearing on February 18, 2003, pursuant to Supreme Court Rule XVII, § 9(B). The commissioner received documentary evidence and heard testimony given by petitioner and her witnesses. This record reveals that in May 1996, petitioner received an undergraduate degree in business and office education. With the assistance of her father, who was then the Superintendent of the Vernon Parish School Board, petitioner obtained a teaching position at DeRidder High School in Beauregard Parish. In May 1998, as petitioner was completing her second year of teaching at DeRidder High, she began a sexual relationship with M.C., a fourteen-year old student in her ninth-grade English class. Petitioner was twenty-three years of age at this time.
Over a period of approximately six weeks, petitioner spoke with M.C. on the telephone or saw him in person nearly every day. Because M.C. was too young to have a driver's license, petitioner arranged to pick him up in an alley behind his home and to take him back to her house, where they engaged in sexual intercourse. In addition, petitioner and M.C. drank alcohol supplied by petitioner, and on one occasion, petitioner allowed M.C. to smoke marijuana that he had brought to her home.
On the evening of July 11, 1998, petitioner picked up M.C. and brought him back to her house, where they engaged in sexual intercourse. However, unbeknownst to petitioner or M.C., the Beauregard Parish Sheriff's Office had received a report from M.C.'s father that his son was "having a sexual affair with one of his school teachers." The officers agreed to investigate the complaint. Upon arriving at petitioner's home, the officers knocked on the door and announced themselves. Petitioner turned off the lights in the house and told M.C. to hide. Meanwhile, petitioner dressed and eventually opened the door, telling the officers she had not heard the knocking because she had been washing her hair. The officers asked whether M.C. was in the house; petitioner lied, said that he was not, and denied he had been inside *111 her home. The officers then requested and obtained petitioner's permission to search the home. M.C. was found hiding in a bedroom closet, underneath a pile of clothes.
Petitioner was arrested and charged with five counts of carnal knowledge of a juvenile and three counts of contributing to the delinquency of a juvenile.[2] On February 25, 1999, pursuant to a plea agreement, the State filed an amended bill of information charging petitioner with two counts of felony carnal knowledge of a juvenile and one count of indecent behavior with a juvenile,[3] also a felony. Petitioner pleaded guilty to the charges in the amended bill of information and was placed on supervised probation for a period of three years with special conditions. State v. Hinson, No. CR-598-98 on the docket of the 36th Judicial District Court for the Parish of Beauregard.
Following her conviction, petitioner was terminated from her position at DeRidder High and she was required to forfeit her teaching certificate to the Louisiana State Department of Education.[4] Petitioner's probation concluded on February 25, 2002, and she has subsequently received an automatic first offender pardon.
At the character and fitness hearing, petitioner admitted she knew her relationship with M.C. was wrong. At the conclusion of the hearing, the commissioner issued detailed findings of fact and conclusions of law and recommended that petitioner be conditionally admitted to the practice of law in Louisiana, subject to a probationary period of two years.
The Committee timely objected to the commissioner's recommendation, and oral argument was conducted before this court pursuant to Supreme Court Rule XVII, § 9(B)(3).

DISCUSSION
This court has the exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the Bar of this state. Bester v. Louisiana Supreme Court Comm. on Bar Admissions, 00-1360 (La.2/21/01), 779 So.2d 715. Among other requirements for admission to the Bar, applicants must demonstrate by competent evidence that they have "good moral character and the fitness necessary to practice law in the State of Louisiana." Supreme Court Rule XVII, § 5(E).
The primary purpose of character and fitness screening is to assure the protection of the public and to safeguard the administration of justice. Supreme Court Rule XVII, § 5(A); In re: Singer, 01-2776 (La.6/12/02), 819 So.2d 1017. The term "good moral character" includes, but is not limited to, the qualities of honesty, fairness, candor, trustworthiness, observances of fiduciary responsibility and of the laws of the State of Louisiana and of the United States of America, and a respect for the *112 rights of other persons. Supreme Court Rule XVII, § 5(B). One of the specific factors to be considered in making a determination of good moral character and fitness is whether the applicant has been convicted of a felony. Supreme Court Rule XVII, § 5(C)(19).
This court has never taken the view that a prior felony conviction will automatically bar an applicant from admission to the practice of law, and we decline to adopt that approach at this time. Rather, we prefer to consider the facts of each case based on the totality of the circumstances which brings the applicant before us. In re: Dileo, 307 So.2d 362 (La.1975). In other words, a felony conviction is simply one of many factors to be considered in determining whether an applicant presently possesses good moral character and fitness.
After reviewing the record developed in this matter, we find that serious character and fitness concerns are present which necessitate the denial of petitioner's application for admission to the practice of law. Setting aside for a moment the gravity of any felony sexual offense,[5] particularly those involving a juvenile victim, we are extraordinarily troubled by the factual circumstances underlying the crimes of which petitioner was convicted. Petitioner occupied a position of trust as a teacher, yet she knowingly and intentionally breached that trust to gratify her own needs. Knowing full well that her conduct was immoral, inappropriate, and illegal, petitioner nevertheless carried on a sexual affair with her fourteen-year old student for nearly two months. Far from discouraging M.C.'s involvement in the relationship, petitioner in fact fostered and encouraged it. She candidly admitted during the character and fitness hearing that the affair would have continued indefinitely but for the fact that M.C.'s father called the police. On more than one occasion, petitioner supplied alcohol for consumption by a minor child, and she countenanced and permitted his use of marijuana while in her home. Finally, when confronted by law enforcement officials, petitioner lied, denied any involvement with M.C., and hid him in a closet in an effort to avoid detection by the police and his parents. Taken as a whole, we find this conduct is not an isolated instance of poor judgment on petitioner's part, but is rather evidence that she fundamentally lacks the character and fitness to be admitted to the practice of law. Accordingly, we must reject the commissioner's recommendation that petitioner be granted the privilege of practicing law in Louisiana.[6]

DECREE
After hearing oral argument, reviewing the evidence, and considering the law, we conclude petitioner has failed to meet her burden of proving that she has "good moral character" to be admitted to the Louisiana State Bar. Accordingly, it is ordered that Kelle Hinson-Lyles' petition for admission be and is denied.
WEIMER, J., concurs and assigns reasons.
*113 CALOGERO, C.J., concurs for the reasons assigned by WEIMER, J.
KNOLL, J., additionally concurs and assigns reasons.
KIMBALL and TRAYLOR, JJ., dissent and assign reasons.
WEIMER, J., concurring.
I find the past criminal conduct of the petitioner reprehensible. However, I believe the per curiam fails to adequately document those facts that led the commissioner to recommend that petitioner be admitted to the bar. At some time in the future, after the lapse of a more substantial period of time from the termination of petitioner's probation and following an evaluation of petitioner's intervening conduct, this court might be called upon to consider whether petitioner has been sufficiently rehabilitated. Therefore, for the sake of completeness, the majority opinion should include the following factual findings of the commissioner which were included in a thorough, thirteen-page report to this court:
 Except for defensive postures mandated by defense counsel, petitioner never denied responsibility for the inappropriate relationship with her fourteen-year old student.
 Until the events leading up to petitioner's guilty plea, she had led an exemplary life with no moral or legal problems whatsoever.
 Petitioner was a model probationer, cooperative, understood she had done wrong, was very remorseful, did more than necessary, wanted to make changes for the good, and owned up completely to her responsibility. Both of her probation officers and counselor confirm all issues were met, she is not a re-offender threat, and all support her application.
 Psychiatric and psychological evaluations by very competent experts in those fields concluded that at the time of the incident petitioner knew right from wrong, but in an immature way. She was a budding adolescent emotionally. She was very naive and inexperienced sexually. (This was her first sexual encounter.) Dr. Harper, psychologist, found no evidence of mental predisposition to re-offend. Dr. Ware, psychiatrist, found a very low risk to re-offend (there being no absolutes).
 All witnesses and exhibits pertinent thereto have a consensuspetitioner presents one of the best examples of how one can change, her maturity is now impressive, she actually has greater resilience than usual in facing ethical demands, she will not re-offend, and they support her application.
 Her only opportunity thus far in the field of law gained her an unqualified recommendation from her employer, a member of the judiciary.
 She is now married, expecting a child, and by all accounts available, is functioning as a normal young married professional.
The commissioner made particular note that at the time of the incident, petitioner was "alone, had no prior experience, [was] immature and at a vulnerable position in her life." He also concluded that petitioner has done all that can be done to achieve the rehabilitation necessary for admission to the practice of law.
In conclusion, the commissioner stated:
This is a case of past conduct. Based simply on the cold record, the obvious seriousness of the charge, and the self evident interest of society, one would be likely to view with great suspicion an offender's application to practice law *114 some five years after commission. Therein lies the problem. What to do when, within a five year span, by clear and convincing evidence, an applicant satisfies the requirements of admission.
...
I have not found, or been cited a decision by this Court addressing our particular situation. See generally In re: Ashy, 721 So.2d 859 (La.1998). The Commissioner's report in the matter In re: Michael Lawrence Bernoudy, Jr., No.2002-OB-2470, pending before this Court, was submitted. Though involved, carnal knowledge was only one of the complaints. Further, the recommendation was greatly influenced by a finding of lack of candor and cooperation on the part of Mr. Bernoudy, Jr., elements not found in the instant matter.
This is a 1998 incident.... It would be ironic, to say the least, for society to admit to law school, with full disclosure, then permanently prevent enjoyment notwithstanding passing all scholastic requisites. Further, I don't feel the level of misconduct herein rises to the level of examples cited. Also, almost five years have elapsed. If she had been in practice and disbarred as a result, she could now apply for reinstatement.
In light of "the totality of circumstances involved," the commissioner recommended that petitioner be conditionally admitted to the practice of law in Louisiana, subject to a probationary period of two years. The commissioner further recommended that during the period of probation, petitioner be required to provide an affidavit to the Supreme Court Committee on Bar Admissions on a quarterly basis, stating that she has not committed or been accused of any misconduct; otherwise, her probationary period may be extended for an additional two years, or her conditional right to practice may be terminated or she may be subject to other discipline pursuant to the Rules for Lawyer Disciplinary Enforcement.
In summary, while I agree that petitioner should not be admitted to the practice of law at this time, I believe that it is important to chronicle all the facts, both favorable and unfavorable, reflected in the record. Therefore, I respectfully concur in the majority opinion of this court.
CALOGERO, C.J., concurs.
KNOLL, J., concurring.
I agree with the majority that petitioner fundamentally lacks the character and fitness to be admitted to the practice of law. I write separately to express my concern that this case demonstrates the need for an admission rule in tandem with permanent disbarment. In my view, it is a mockery of our rules to allow someone to apply for admission when the undisputed conduct at issue is a recommended ground for permanent disbarment.
Drafting conduct rules governing the legal profession is a very difficult and grave responsibility that we exercise with great caution. However, it is clear in my mind that when conduct is so egregious that it constitutes grounds for permanent disbarment, then the person involved should likewise be permanently prohibited from applying for admission.
The petitioner before us should never be admitted to the practice of law because her admitted and egregious conduct constitutes grounds for permanent disbarment.
KIMBALL, Justice, dissenting.
In my view, this case presents a tragic example of this court's inability to formulate definitive rules to cover these difficult character and fitness issues. In this particular case, this applicant was allowed to attend law school, notwithstanding the fact *115 that she was on active felony probation and had surrendered her teaching certificate, thereby effectively disqualifying her from her original profession. After successfully completing her studies, this court allowed the applicant to sit for the bar examination, which she passed.
This court's rules relating to admission to the bar of the State of Louisiana exist to protect the public and to safeguard the administration of justice. The required assessment of moral character and fitness looks to an applicant's record of past conduct. Admission may be denied on the basis of an applicant's record of past conduct when such record manifests "a significant deficiency in the honesty, trustworthiness, diligence or reliability of an applicant." Supreme Court Rule XVII, § 5(B). When an applicant is found to have engaged in conduct which at that time would have constituted grounds for an unfavorable recommendation, then that applicant bears the burden of proof to affirmatively show character rehabilitation and that such inclination or instability is unlikely to recur in the future. Supreme Court Rule XVII, § 5(D).
In the instant case, the record clearly reveals that the applicant overwhelmingly proved that her character has been rehabilitated and that such inclination or instability is unlikely to recur in the future. For example, the supervisor of applicant's first five months of probation described the applicant as a model probationer and recommended her for admission to the bar. Additionally, the attorney who previously represented applicant in connection with the criminal charges that are the subject of this investigation testified that applicant took responsibility for her actions from the outset and, because the attorney had "the utmost confidence in her," wrote a strong letter of recommendation to Southern University Law Center and, later, the National Conference of Bar Examiners. He also assisted the applicant in obtaining a position as a law clerk in the Ninth Judicial District Court. A Shreveport psychiatrist who evaluated the applicant opined there is a very low risk that the applicant will commit a sexual offense in the future. The director of the clinical education department at Southern University Law Center who supervised the applicant's class work testified that the applicant was very dedicated, extremely committed, and worked all the time to make "sure that it's right." The judge for whom applicant worked as a law clerk reported that her work has been excellent, that she is very conscientious, and that she gets along well with others in the court. The judge highly recommended the applicant for admission to the bar "regardless of her past situation or the circumstances." After hearing all the evidence in this case, the commissioner found the applicant understood her past behavior was wrong, was remorseful, and wanted to make positive changes in her life. The commissioner found that psychiatric and psychological evaluations showed applicant knew right from wrong, but in an immature way such that she was emotionally a budding adolescent when the behavior at issue occurred. Finally, the commissioner found that the applicant is now married, expecting a child, and by all accounts is functioning as a normal young married professional.
Although this appears to be an unusual case with extraordinary facts, it is clear to me that the applicant has produced an impressive amount of evidence proving that she has good moral character and the fitness necessary to practice law in the State of Louisiana. The medical evidence consistently reveals that there is a very low risk the applicant will re-offend. In concluding that this case presents serious character and fitness concerns that necessitate the denial of the petitioner's application for admission to the practice of law, *116 the majority disingenuously focuses solely on the applicant's past deplorable conduct and fails to consider or even mention the overwhelming evidence that the applicant has turned her life around. The retired judge appointed as a commissioner by this court to hear evidence in this case found as a matter of fact that the applicant has done all that can be done to achieve the rehabilitation necessary for admission to the practice of law. In reaching its decision to deny the applicant admission, the majority simply ignores the factual findings made by the appointed commissioner.
The case before us illustrates the need for clear rules detailing what conduct will likely prevent an applicant from being admitted to the bar of our state. In my view, potential law students should be given notice of the types of conduct that will probably preclude them from practicing law before they undertake the challenge of law school and, in many cases, incur substantial debt to acquire a legal education. This court should work with Louisiana's law schools to ensure potential students are given clear information so they can make informed choices.
Under the facts of this particular case, I believe the applicant should be conditionally admitted to the practice of law, subject to a probationary period of two years. As the commissioner found, the applicant has done everything she can to show the necessary rehabilitation. Because the applicant has complied with every requirement presently contained in our rules, it is simply unjust to deny her admission at this juncture.
TRAYLOR, J., dissenting.
In July of last year, Kelle Hinson-Lyles applied to sit for the Louisiana Bar Examination. Her application was opposed by the Committee on Bar Admissions based upon her three 1999 felony convictions. This Court, in its collective wisdom, allowed the petitioner to take the bar examination, upon the condition that she apply to the court for the appointment of a commissioner to take character and fitness evidence. I opposed allowing the petitioner to take the examination and voted, along with Justices Kimball and Knoll, to deny her application.
Ms. Hinson-Lyles took and passed the bar examination and subsequently requested the appointment of a commissioner to take character and fitness evidence. The commissioner held a hearing, took evidence, and found that petitioner possessed the requisite character and fitness to be conditionally admitted to the bar based upon her rehabilitation. This Court now determines that the petitioner should not be admitted to the bar, even though the only new evidence we have before us supports her conditional admission, as recommended by the commissioner that this Court appointed for that purpose.
I do not take the position that Ms. Hinson-Lyles possesses the character and fitness required to be admitted to the bar and, in fact, adhere to my previous determination that she should not have been allowed to sit for the bar examination. I do, however, believe that when this Court allows a person to take the bar examination upon condition, and then that person passes the examination and meets the conditions set before them, it is disingenuous for the Court to then decide that more conditions must be met, especially without stating what those conditions are.
In this case what can the petitioner do that she has not done? Wait and apply later? When or what is the "magic moment" which will show that rehabilitation has occurred? If Ms. Hinson-Lyles applies five years from now, will that be long enough? Ten years? Will she ever be able to show successful rehabilitation? If not, why was she allowed to take the bar examination at all?
*117 Supreme Court Rule XVII contains the factors to be considered when assessing past conduct and rehabilitation in relation to an applicant's character and fitness to practice law. These factors include the applicant's age since the conduct, the time elapsed since the conduct, the reliability of the information concerning the conduct, the seriousness of the conduct, factors underlying the conduct, the cumulative effect of the conduct, the applicant's social contributions, the applicant's candor and cooperation, the materiality of any omissions or misrepresentations, and the evidence of rehabilitation. Sup.Ct. R. XVII, § 5(D). None of these factors is determinative and all are subjective and give little guidance to either applicants for admission to the bar or to the commissioners we appoint to make findings of fact and determinations of law. In fact, according to these factors, no conduct, including murder, disqualifies a candidate from admission to the bar. This Court must develop definitive rules as to what conduct may be rehabilitated and what conduct is a bar to admission, both to give useful guidance to applicants and to avoid wasting valuable time and resources.
NOTES
[1] In cases in which the Committee has declined to recommend admission based on character and fitness concerns, it has been the court's customary practice to permit the applicant to sit for the bar examination subject to a later determination respecting character and fitness. It will frequently be necessary for this court to appoint a commissioner for the purpose of developing a record upon which we can proceed to make such a determination. The appointment of a commissioner in no way represents a finding by this court that the applicant does, in fact, possess good moral character and fitness.
[2] The carnal knowledge of a juvenile charges relate to five separate occasions on which petitioner had sexual relations with M.C.; however, petitioner candidly admitted in a sworn statement that "there's probably seven or eight, maybe even nine" occasions on which she and M.C. had sex. The contributing to the delinquency of a juvenile charges relate to the occasions on which petitioner gave alcohol to M.C. and allowed him to smoke marijuana in her presence.
[3] The indecent behavior charge relates to an occasion on which petitioner and M.C. engaged in oral sexual relations. The district attorney's office dropped the contributing to the delinquency of a juvenile charges.
[4] It appears from the record that no administrative proceeding was conducted; rather, petitioner surrendered her teaching certificate as a condition of her guilty plea.
[5] We observe that sexual misconduct resulting in a felony criminal conviction is a ground for the permanent disbarment of an attorney who is licensed to practice law in Louisiana. See Guideline 4 of the permanent disbarment guidelines set forth in Supreme Court Rule XIX, Appendix E.
[6] While we afford some deference to the commissioner's recommendation, making due allowance for the commissioner's opportunity to observe and evaluate the demeanor of the applicant and the witnesses, the ultimate decision regarding admission rests with this court.